Commonwealth *v.* Szachewicz, Appellant.

Argued January 12, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Sadler, Schaffer and Maxey, JJ.

*A. A. Maguire,* with him *Charles Rozmarek,* for appellant.—Inasmuch as there are no principles of law or essential evidentiary facts necessarily required to be present before a jury may fix the death penalty, we maintain that the court exceeds its prerogatives in expressing an opinion on the penalty: Com. v. Bishop, 285 Pa. 49.

The measure of proof, when the sufficiency of evidence to establish an alibi is the question, is simply that it shall be satisfactory: Com. v. Andrews, 234 Pa. 597; Meyers v. Com., 83 Pa. 131; Com. v. Delfino, 259 Pa. 272; Com. v. Barrish, 297 Pa. 160.

The court erred in refusing to receive in evidence the testimony of Dr. William Lynch, an expert alienist, who was called by defendant. An offer was made that the witness, Dr. Lynch, would testify to the mental age of defendant and other facts bearing on the mental and moral capacity of defendant. This, to substantiate, in part, defendant's testimony regarding the alleged statements or confessions elicited from him: Com. v. Bishop, 285 Pa. 49; Com. v. Wilson, 186 Pa. 1.

The court erred in admitting testimony relative to the clothes worn by deceased at the time of his death, and the admission in evidence of the clothing.

*Herman J. Goldberg,* with him *Thomas M. Lewis,* District Attorney, and *S. M. DePierro,* Assistant District Attorney, for appellee.—The Act of May 14, 1925, P. L. 759, does not preclude the trial judge from expressing an opinion on the penalty to be fixed by the jury: Com. v. Lawrence, 282 Pa. 128; Com. v. Cunningham, 232 Pa.

609; Com. v. Ronello, 251 Pa. 329; Com. v. Tenbroeck, 265 Pa. 251; Com. v. Parker, 294 Pa. 144.

The court did not err in its charge on the measure of proof required to establish an alibi: Com. v. White, 271 Pa. 584; Watson v. Com., 95 Pa. 418; Com. v. Quaranta, 295 Pa. 264; Com. v. Winter, 289 Pa. 284; Com. v. Mendola, 294 Pa. 353.

Portions of a charge in a murder case, which are correct when taken in connection with the charge as a whole, cannot be alleged as harmful: Com. v. Touri, 295 Pa. 50; Com. v. Meyers, 290 Pa. 573; Com. v. Johnson, 279 Pa. 40; Com. v. Millien, 291 Pa. 291.

Testimony by an expert as to low mentality of defendant to affect the confession was inadmissible: Pannell v. Com., 86 Pa. 260; Jacobs v. Com., 121 Pa. 586; Taylor v. Com., 109 Pa. 262; Com. v. Cressinger, 193 Pa. 326; Sayres v. Com., 88 Pa. 291; Com. v. Renzo, 216 Pa. 147.

The court did not err in admitting testimony relative to the clothes worn by deceased at the time of his death: Com. v. James, 294 Pa. 156.

Opinion by Mr. Justice Kephart, February 2, 1931:

Appellant was convicted of murder, in the first degree, of Arthur Webb; the jury fixed the penalty at death. His appeal alleges a number of trial errors.

On January 13, 1930, at about 3:50 p. m., a pay car, containing approximately $35,000, with its occupants was blown up by bandits; the paymaster, Webb, and three guards were killed. The pay car, an open mine car with benches along the sides for seats and with a box chained to the floor containing the money, started from the Truesdale Colliery of the Glen Alden Coal Company in Warrior Run, Luzerne County, for the twenty-mile tunnel of that company about two miles distant. The money was intended to be used to pay the men. The car, manned by the paymaster and five guards, all armed, was hauled by an electric locomotive in charge

of a motorman and brakeman. The car proceeded over a narrow guage railway, and, when it was near an isolated and remote place, a signal of its approach was given to a man in ambush. The perpetrators of the crime had planted dynamite beneath the tracks, and, just as the pay car was passing, the dynamite was set off by means of an electric spark from a radio battery concealed behind a barricade eighty feet distant. The force of the explosion disconnected the engine, derailed the car, and threw its occupants many feet away.

The money box was broken open and its contents thrown over the ground. The locomotive after being disconnected ran a short distance up the track but immediately returned; the motorman went forward to survey the trouble. He saw the men lying about, some dead, others dying. Those who were not killed were badly injured. A man who he thought was a guard was seen running from the place; he called, "Hello, Rockie." This man continued his flight.

Assistance was summoned from Mine Twenty, and a search immediately followed. It was discovered that a box containing some seventy sticks of dynamite had been stolen from the company a few days before. The box with thirty-four sticks remaining was found concealed among trees close to the ambuscade. Nineteen sticks were found buried at another point, and three more sticks were otherwise accounted for, leaving fourteen or fifteen sticks which were probably used for the explosion. The charge of dynamite was connected to a concealed radio battery by a wire stolen from the company. The battery was purchased at Nanticoke. A polka-dot handkerchief was found not far from the point of explosion.

About a month later defendant was arrested. While at the barracks of the state police, he made a number of confessions admitting his participation in the crime. He then wrote a letter to his wife and one to his mother, in each of which he spoke of his participation in the

crime. Later he took the officers over the route traveled by him before and after the homicide. He carefully pointed out the powder house from which the dynamite had been stolen (narrating the way it had been taken), the place where the explosion took place (though it had been put in the same condition as it was before the crime), the location of the battery (though it had been moved), the place where the dynamite had been hidden (though the box was gone), and the point where he had signalled his accomplice, this being the exact spot where his handkerchief had been found. He admitted ownership of the handkerchief and admitted to the motorman, as well as to the officers, that after the explosion he heard a man call, "Hello, Rockie." He described the route they took when they fled after committing the offense. Both Nafus and this defendant admitted their participation, each separately describing the facts in detail. Both made statements and signed them. On the first trip over the scene the accused implicated five persons as being connected with the crime, describing on this trip the part each took in its commission. Later, the accused eliminated all the other men except Nafus. The stories of the latter and the defendant were practically identical as to all material parts except as to who placed the dynamite under the tracks.

The defendant completely repudiated the oral and written confessions and the statements made on the trip, asserting that everything that was said and done was procured through fear and abuse inflicted by the officers, and the defense was that of an alibi.

The first assignment of error is answered in Tex Nafus's Appeal which follows. It is dismissed for the reasons stated in that opinion.

The second assignment complains of a statement by the trial judge in his charge to the jury to the effect that where the Commonwealth rests upon positive and undoubted proof of the prisoner's guilt, it should not be overcome by less than full, clear, and satisfactory evi-

dence of the alleged alibi. It is contended that this left the jury under an erroneous impression as to the measure of proof required to sustain an alibi and that such impression could not be effaced by subsequent correct instructions. When the sufficiency of an alibi is in question, the rule is that it must be established by satisfactory proof, as discussed in Com. v. Barrish, 297 Pa. 160. The charge must be read as a whole, and excerpts therefrom must be read in connection with the context: Com. v. Touri, 295 Pa. 50, 58; Com. v. Welch, 291 Pa. 40, 45. We have carefully read the charge in this case and are of the opinion that, taken as a whole, it correctly sets forth the measure of proof necessary in cases of an alleged alibi. The assignment is overruled.

The third assignment of error complains of the ruling of the trial judge when Dr. Lynch, an alienist, was called to the stand and the following offer of proof was made: "That the defendant is of low mentality, and is irresponsible; that he is of the type who will make untrue statements to avoid punishment by incarceration; that he will make untrue statements readily, being susceptible to suggestion; that he is of low mental age." The court sustained the Commonwealth's objection to this offer.

It will be noted that the purpose of the offer was not to prove the lack of mental capacity to commit the crime on the ground of insanity. We have held that our test for insanity, as it relates to crime, is the ability to distinguish between right and wrong: Taylor v. Com., 109 Pa. 262. Persons are not below par, subnormal, or mentally deficient in judgment, in determinative or discriminative power or in self-control, when considered in relation to criminal acts, if they know the difference between right and wrong. The general run of the criminal class is usually of a low mental type. The doctrine of partial responsibility adopted in some other states would turn loose on society a class of dangerous citizens who, because of their legalized immunity, would prey on other members of society without much restraint. Just and

necessary protection requires the recognition of a rule which will not secure that immunity, either in whole or in part, to individuals of that type. We have disapproved of the defense of partial insanity in homicide cases: Com. v. Cressinger, 193 Pa. 326; Jacobs v. Com., 121 Pa. 586; Taylor v. Com., supra.

The offer was made for the purpose of attacking the confession and for this purpose was too broad and too indefinite. It was an offer to prove that the defendant was susceptible to suggestions. These might come from any source and be of any character; any mind, normal or otherwise, may be, and often is, amenable to suggestions. It will be noticed that the offer was not to show that defendant was peculiarly amenable to suggestions because of fear. For this reason, the court below was not in error in excluding the offer.

The seventh assignment of error objects to the admission in evidence of the clothing of the deceased. There was no objection made by defendant to the offer of the clothing, but, had there been, the Commonwealth would have been able to state the purpose of the offer which was to show the force and nature of the explosion that resulted in the death of Webb. We recently discussed this matter in Com. v. Flood, 302 Pa. 190, and in Com. v. James, 294 Pa. 156, where we said that the admission in evidence of clothing worn by the deceased was within the discretion of the trial judge. Here it was established that the explosion came from under the pay car and because of its mutilated condition the clothing was evidence of the force and nature of the explosion. The court below did not abuse its discretion in admitting the clothing in evidence.

In this case, as in that of Nafus (which follows), we have read the evidence to ascertain if the ingredients of first degree murder are present and if the accused could be found responsible for it. All the essentials are present in this case. The defendant produced testimony of an alibi, denied participation in the crime, and testified

to a course of treatment by the officers which, if believed, would render his confession valueless. All of these were questions for the jury. We need not repeat what is said in the succeeding Nafus Case as to the functions of this court and the jury. The jury has decided the questions of fact and, disbelieving defendant's testimony, the Commonwealth's evidence is ample to support their conclusion.

We have considered all the assignments of error; they are overruled. The judgment is affirmed, and the record remitted for the purpose of execution.