Commonwealth *v.* Kurus, Appellant.

Argued October 2, 1952. Before STERN, STEARNE, JONES, BELL and MUSMANNO, JJ.

*Peter F. Flaherty,* for appellant.

*Albert A. Fiok,* Assistant District Attorney, with him *James F. Malone, Jr.,* District Attorney, for appellee.

Opinion by Mr. Justice Jones, November 18, 1952:

The appellant pleaded not guilty to an indictment charging him with the murder of his common law wife. At all times until sentence, he was represented by counsel privately employed by his sister. During the selection of the jury at trial, he changed his plea to guilty and the trial judge proceeded to hear testimony for the purpose of determining the degree of the crime. Finding the defendant guilty of murder in the second degree, the court sentenced him to not less than nine nor more than eighteen years in the penitentiary. After he had served approximately two years of the sentence, the defendant, acting in propria persona, petitioned the trial court for a writ of error coram nobis seeking thereby to withdraw his plea of guilty on the ground that he had acted in the premises under a misunderstanding of the nature and consequences of the plea. Specifically, he alleged that his counsel had deceived him in regard to the effect of the plea of guilty and that the hearing judge had overreached him by acting affirmatively on the plea after the defendant had testified in substantial denial of his guilt of the crime charged. Following a hearing on the petition, the court refused the writ and dismissed the petition. From that order, the defendant took this appeal in forma pauperis upon our allowance. He has been ably represented in this court by appointed counsel who has served gratuitously and who has earnestly argued the petitioner's contentions at length both orally and by brief.

It is open to serious doubt whether a writ of coram nobis properly lies in circumstances such as the petitioner avers. The situations in which such a writ is the appropriate legal instrument for the relief sought are extremely limited: see *Commonwealth v. Harris,* 351 Pa. 325, 327-329, 41 A. 2d 688; also *Commonwealth*

*v. Brewer,* 170 Pa. Superior Ct. 251, 252, 85 A. 2d 618. As a corollary, writs of coram nobis have been rarely applied for in this State and, still more rarely, have they been granted. In the *Harris* case, supra, Chief Justice MAXEY pointed out (p. 329) that "The writ of coram nobis has seldom been invoked in Pennsylvania [see instances in footnote], and we believe that this is the first time [1945] a question involving the issuance of this writ has been before this court in a criminal case." There is nothing in the petitioner's case that was not a matter of record or known to him at the time judgment of sentence was imposed: cf. *Commonwealth v. Harris* and *Commonwealth v. Brewer,* supra. However, we do not predicate anything on the possible inapplicability of the procedure now resorted to by the petitioner. If his case were meritorious, we would readily fit the proper remedy to the facts. But, we fail to find any validity in his contentions.

At the hearing on the petition for the writ, the defendant testified that his change of plea to guilty was made upon the assurance of his counsel "that there could be an acquittal" by the court and that, if the result reached by the court was not satisfactory to him, he could have "a regular jury trial". On the other hand, petitioner's trial counsel, whom the court found to be a reputable member of the bar of the county, testified that the effect of the plea of guilty was thoroughly explained to the defendant in the presence of his sister and associate counsel during a recess of the trial (the jury was being selected at the time) and that the defendant fully understood the import of the plea. When counsel was asked on cross-examination whether ". . . there was any discussion between you and the defendant with reference to the fact that if he wasn't satisfied, that he could have a jury trial if he wasn't satisfied with the result before the Court", he

unequivocally answered,—"No, that is not true. I think no attorney at the Bar would tell any defendant that." On the basis of the credible testimony adduced at the hearing on the petition, the court below aptly characterized the petitioner's contention, relative to the alleged inducement of his counsel to enter a plea of guilty, as being "so ridiculous as to be absurd". It would require more than credulity to accredit that counsel told his client anything so obviously fallacious and readily susceptible of being so revealed. Upon resumption of the trial, following the recess, the defendant formally withdrew his plea of not guilty, was rearraigned and thereupon pleaded guilty. The court, commanding the defendant to stand up, addressed him as follows: "You are pleading guilty generally to this indictment. Is that what you want?" The defendant answered "Yes". The court then took testimony, including the defendant's, to determine the degree of the crime.

The contention that the defendant testified in virtual repudiation of his plea of guilty and that the court should therefore have vacated the plea and put him to trial before a jury upon a plea of not guilty is equally untenable. It is true that the defendant denied a specific intent to take the deceased's life, but it is also true that he not only did not deny, but actually admitted, that the lethal weapon (a knife) was clasped in his hand when it entered the body of the deceased with mortal effect. His denial of guilt was but his own interpretation of the legal consequences of his undisputed conduct which, naturally, he was anxious to have appear to the hearing judge in the light most favorable to him. According to the defendant's version of the fatal occurrence,—during a wrangle with his wife she ". . . went over and grabbed something [i.e., the knife] off the mantle and she came after me

. . . and I reached for the knife, I grabbed for it, and finally I got it off her. I know I had the knife and I think I dropped it in my pocket and she ran down the hall and was yelling . . . ." A young daughter of the deceased who was in the room at the time of the occurrence testified that the knife was never in her mother's hands throughout the altercation and further that the defendant ". . . stabbed her [mother] and threw her against the door and tried to hit her, stab her again." The defendant also told a nearby squire shortly after the affray that he had stabbed his wife. When interrogated in court, he did not deny having had so declared but merely equivocated, saying,—"I was excited. I don't remember what I told him."

The court was under no legal duty to accept as absolute verity the defendant's recital of the circumstances attending the homicide. Nor could the court have justifiably done so in the light of all of the evidence in the case. That the testimony made out a case of murder is not open to question. The facts warranted a finding that the defendant used the deadly weapon on a vital part of the deceased's body with malice aforethought. Indeed, as the court below has stated,—"From this testimony the degree of guilt might well have been that of murder of the first degree." Inasmuch as a plea of guilty generally to an indictment for murder automatically constitutes the crime murder in the second degree, the burden is on the Commonwealth, if it desires to raise the degree to first, to produce the necessary testimony: *Commonwealth v. Samuel Jones*, 355 Pa. 522, 525, 50 A. 2d 317. In the present instance the court was of the opinion that the Commonwealth had failed to show that the murder was deliberate and premeditated and, hence, found the defendant guilty of murder in the second degree.

The appellant's remaining contention that the trial

judge improperly restricted his counsel's cross-examination of a Commonwealth's witness raises alleged trial error which is reviewable on appeal and not on a writ of coram nobis. None the less, we have carefully examined the record and find no abuse of discretion by the trial judge in bringing the cross-examination of the witness to a conclusion when he did. The cross-examination, which had already considerably exceeded the direct examination of the witness, had become repetitive. The defendant's rights were fully respected. All told, twenty witnesses were heard, some at length, for a total of a hundred and twenty-one pages of testimony as disclosed by the transcript.

Order affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Trial Judge in this case is one of the most able and experienced jurists in our Commonwealth, and it is not with the slightest reflection on his great ability and splendid record on the bench that I find it necessary to dissent from my brethren in the disposition of the writ before us here.

I believe that when the defendant at the hearing before the Judge told a story which, if accepted as fact, would acquit him not only of second degree murder but of any criminal offense at all, his plea should have been changed to not guilty and the case ordered to trial before a jury. It is quite possible that in that event the defendant would have fared much worse than he did before the judge, so that in point of objectivity the defendant benefitted rather than lost by the action of the judge. Nonetheless I believe that a disturbing precedent can be established in accepting a plea of guilty on a narrative which completely negates guilt.