## Commonwealth *v.* Patskin, Appellant.

Argued September 28, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Myron A. Pinkus, with him Alphonsus L. Casey, for appellant.

Carlon M. O'Malley, District Attorney and Frank P. Lawley, Jr., Deputy Attorney General, with them Thomas J. Foley and Ralph P. Needle, Assistant District Attorneys, and Robert E. Woodside, Attorney General, for appellee.

OPINION BY MR. JUSTICE BELL, November 17, 1953:

William Patskin was indicted and tried in the Court of Oyer and Terminer of Lackawanna County in October, 1951, for the murder of his wife. The jury found him guilty of first degree murder and fixed the penalty at death. The murder was a particularly brutal one. Defendant made several detailed confessions and re-enacted the crime in the presence of police officers. Nevertheless, he pleaded "not guilty", interposed the defense of insanity and did not take the witness stand or deny anything.

After a careful review of the testimony, we affirmed the conviction in 372 Pa. 402, 93 A. 2d 704, and in the course of our opinion said: ". . . The defendant's actions, statements and confessions—even without the corroborating testimony of the Commonwealth's expert witnesses and lay witnesses—wholly refute the opinion evidence of defendant's expert medical witnesses. As Justice (now Chief Justice) STERN said in Commonwealth v. Heller, 369 Pa. 457, 461, 462, 87 A. 2d 287: '. . . defendant's actions in the pres-

ent case, speaking louder than his words, wholly refute the opinion evidence of the expert medical witness . . . .' In this case the jury must have believed, as we do, that the delusions were concocted by the defendant for the trial. Defendant's doctors based their opinion of insanity 75 per cent on defendant's alleged delusions and placed great reliance upon the fact that defendant did not hide the body; that the killing was brutal and uneconomical;* that defendant readily gave himself up; and showed no remorse or sense of guilt for having killed the woman he hated. *If evidence such as this were sufficient to prove legal insanity and to prevail over acts and statements clearly evidencing sanity, few 'murderers' would ever be convicted.***

. . .

"We are absolutely convinced from reading the entire testimony that the jury's verdict was just and proper . . . ."

Defendant thereafter applied to the State Board of Pardons for commutation of his sentence, but his application was denied.

---

\* The profession and prestige of psychiatry has been gravely damaged by the testimony of some of its experts on the subject of insanity in homicide cases, as a result of which considerable doubt of the soundness or dependability of their conclusions has been raised in the minds of Courts and juries alike. While the science of psychiatry has made tremendous strides, the Courts of Pennsylvania have at this stage of scientific knowledge refused, and we believe wisely refused, to substitute psychiatric tests or conclusions for our long and wisely established "right and wrong" test. The law of Pennsylvania (following *M'Naghten's Case*, 10 Cl. & Fin. 200 (1843)) provides that the test of insanity is whether the defendant at the time of the commission of the killing knew the nature and consequences of his acts, or the difference between right and wrong: *Commonwealth v. Heller*, 369 Pa., supra.

\*\* Italics throughout, ours.

On March 30, 1953, counsel for Patskin, in accordance with the provisions of §344 of the Mental Health Act of July 11, 1923, as amended by §11 of the Act of June 12, 1951, P. L. 533, 50 PS 1224, petitioned for the commitment of Patskin to a mental hospital, averring that he is now mentally ill, his mental condition having deteriorated substantially since the date of his trial and conviction. The Mental Health Act provides that upon the petition of counsel for defendant (or district attorney or warden, or any other responsible person), a Sanity Commission, consisting of a qualified psychiatrist, a physician and an attorney, shall be appointed by the Court to investigate the mental condition of the person charged with crime and to report thereon. This Court has construed this provision of the Act to be discretionary not mandatory: *Commonwealth v. Elliott*, 371 Pa. 70, 89 A. 2d 782; *Com. ex rel. Smith v. Ashe*, 364 Pa. 93, 71 A. 2d 107; *Com. v. Iacobino*, 319 Pa. 65, 178 A. 823; *Com. v. Scovern*, 292 Pa. 26, 140 A. 611; *Com. v. Barnes*, 280 Pa. 351, 124 A. 636; *Com. v. Hays*, 195 Pa. 270, 45 A. 728.

The Court exercised its discretion and on April 2, 1953, appointed a Sanity Commission, consisting of a qualified psychiatrist, a physician and an attorney, to investigate the mental condition of William Patskin and to report thereon.

The Commission thereupon proceeded to make a series of examinations, which included both physical and neuropsychiatric examinations and certain laboratory, x-ray and electroencephalographic tests. The Commission filed its report with the lower court in which it made, *inter alia*, the following findings: (1) William Patskin is in fact mentally ill; (2) he is a schizophrenic of the paranoid type; (3) this illness is now chronic and incurable; (4) he is dangerous to

those about him; (5) he is a proper subject for commitment to a hospital.

In view of the provision of the Mental Health Act, §344, subsection (c) which provides that "No application shall be made for the commitment of any *mental defective* convicted of first degree murder", the Commission made the further finding that "William Patskin is not a mental defective as defined in the said Act."

Some of the Commission's findings as to whether Patskin was legally insane or mentally ill were ambiguous and inadequate. To resolve these important questions the lower court en banc directed the members of the Commission to appear personally before it for oral interrogation. All the members of the Commission were asked specifically whether they were prepared to express professional opinions on the following questions:

"(a) Whether William Patskin as of the present date is so insane from disease of the mind as to be unable to distinguish the difference between right and wrong?

"(b) Whether William Patskin as of the present date is so insane from disease of the mind as to be unable to understand the nature and quality of his acts and to distinguish between right and wrong with respect to them?"

The members of the Commission disagreed in their answers to these questions. The psychiatrist and the physician testified that, in their opinion, Patskin knows the difference between right and wrong as to acts and conduct of other people but because of the existence of a *mental illness* lacks capacity to judge any of his own acts as wrong. The lawyer member testified that, in his opinion, the defendant presently knows the difference between right and wrong.

After a careful and conscientious study of (a) the written report of the Commission, and (b) their answers to the questions asked by the Court at the oral examination, and (c) a reading and consideration of the record and the transcript of the testimony of the witnesses interviewed by the Commission, the lower court made the following findings of fact (President Judge HOBAN dissenting):

"1. The defendant, William Patskin, is now and has been at all times concerned legally sane.

"2. The defendant, William Patskin, possesses sufficient mental ability to distinguish between what is right and what is wrong.

"3. The defendant, William Patskin, knows why he is in jail and that he is under sentence of death for the killing of his wife and has sufficient mental ability to communicate reasons to his counsel and others why the sentence of death should be commuted.

"4. The alleged delusions of the defendant, William Patskin, which were an important factor in the thinking of the medical members of the commission and undoubtedly influenced their conclusions that the defendant is mentally ill were faked and concocted for the purpose of aiding him escape a just punishment.

"5. *We are not convinced or satisfied* that the defendant *is at present mentally ill* as defined under the terms of the Mental Health Act."

The majority of the lower court were of the opinion that it was not their duty to rubber stamp the reasoning, findings and conclusions of the Commission regardless of their own conscientious belief or findings. They correctly believed that it was their duty and responsibility to evaluate all of the evidence and to conscientiously determine *whether it satisfied them* that Patskin was insane or mentally ill. President Judge HOBAN believed that judges are not qualified to make

such evaluations as well as psychiatrists are; however, because a judge daily sees and hears perhaps a hundred witnesses to the one seen by a psychiatrist, we feel he may be and ofttimes is far better qualified to pass upon credibility than is a psychiatrist with his relatively limited experience in this field. However, as we shall see, this is not the test.

. The Mental Health Act of 1951 is silent on the question of appellate review where commitment is denied. The law is now well settled that "where the statute is silent on the question of appeal a review by certiorari may be had 'in the broadest sense' and the court may consider the record, including the testimony, to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made.": *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514, 519, 55 A. 2d 534; *Commonwealth v. Cronin,* 336 Pa. 469, 474, 475, 9 A. 2d 408, 411; *Bureau of Highway Safety v. Wright,* 355 Pa. 307, 49 A. 2d 783; *Bangor Electric Co.'s Petition,* 295 Pa. 228, 232, 145 A. 128, 129; *Clarke's Case,* 301 Pa. 321, 326, 152 A. 92, 94.

If a commission is appointed its findings are advisory and not mandatory upon the Court—under the Act it is the Court and not the psychiatrist or the Sanity Commission which must be satisfied that the petitioner is insane or mentally ill. (Sub-section (d) of §345.) This is a sound and wise provision as is evident, we believe, from the reasoning, testimony and conclusions of defense psychiatrists at the original trial of this defendant. This and similar testimony as to insanity in many other homicide cases justify the rule or axiom that in such cases expert testimony is entitled to little weight as against positive facts. Expert medical opinions are especially entitled to little or no weight when based upon insufficient or (partly)

erroneous facts or a feigned state of mind or an inaccurate past history, or upon unreasonable deductions, or an erroneous conception of legal insanity. Cf.: *Com. v. Carluccetti,* 369 Pa. 190, 202, 203, 85 A. 2d 391; *Com. v. Heller,* 369 Pa. 457, 461, 462, 87 A. 2d 287; *DeMaio Will,* 363 Pa. 559, 563, 70 A. 2d 339; *Phillips's Estate,* 299 Pa. 415, 422, 423, 149 A. 719; *Com. v. Wireback,* 190 Pa. 138, 42 A. 542. In *Com. v. Carluccetti,* 369 Pa., supra, this Court, with reference to the competency of lay witnesses and psychiatrists on the question of insanity, said (pages 202, 203) : " '. . . They are what we call lay witnesses. They do not claim to be experts on the mind . . . . They are called to rebut the testimony on behalf of the defendant that he is of unsound mind . . . . *You do not have to be a psychiatrist to judge whether a man's actions are normal or abnormal.* . . . the testimony of the layman is to be considered as well as the testimony of the so-called experts.' See Paper Books, 293 Pa. 208, Record 145a. In Commonwealth v. Gearhardt, 205 Pa. 387, 391, 54 A. 1029, the 'intelligent layman' was recognized as being no less capable than an expert of defining the distinction between legally cognizable mental conditions. . . . the court's answer to the request '. . . was in effect putting on a par with the testimony of the mental expert, Dr. Spear, the testimony of all of the sixteen lay witnesses.' There was no error in that: see quotation from Judge MAXEY's charge to the jury in Commonwealth v. Cilione, supra; also Commonwealth v. Gearhardt, supra."

What this Court said in *Com. v. Elliott,* 371 Pa. 70, 89 A. 2d 782, which dealt with a moron who had been convicted of first degree murder and sentenced to death, is in its pertinent part equally appropriate here: "Defendant contends that because a criminal or murderer is a weak, unstable, aggressive, dangerous moron who is mentally deficient the sentencing Judge or Court

(1) must consider his record during his entire life and particularly reports of every psychologist and psychiatrist who has examined him, and (2) must be *controlled* by these reports and impose a sentence in the case of murder in the first degree not higher than life imprisonment. This contention carries the theory or doctrine of 'diminished responsibility' to an extreme and would vest in a psychiatrist and not in the Courts the right and power to determine and fix punishment for crimes. *Such a theory or philosophy would soon transfer the punishment of criminals from Court to psychiatrists and would inevitably result in a further breakdown of law enforcement and eventual confusion and chaos.* Fortunately our cases are opposed to such an undesirable result."

A Court has no right to arbitrarily or capriciously reject the findings or conclusions of a Sanity Commission. Upon appeal we should reverse a lower court only for an abuse of discretion or an error of law. The Court en banc in the instant case carefully and wisely studied the testimony and examined the members of the Commission, and concluded that Patskin was now and has been at all times concerned, legally sane, and that *they were not satisfied that the defendant is at present mentally ill* as defined under the terms of the Mental Health Act. The test is the petitioner's condition, not at the time of the trial but at the time of the petition and commission. Nevertheless, we believe that the legislature never intended the issue of insanity or any issue which was decided by a jury and approved by the Courts—who, we may add, will never knowingly permit an insane man to be tried, sentenced or executed: *Com. ex rel. Smith v. Ashe,* 364 Pa. 93, 116, 71 A. 2d 107; *Com. v. Scovern,* 292 Pa. 26, 140 A. 611; Blackstone's Commentaries, Book Four, §24, page 1440; 3 Coke's Inst. 4;—to be relitigated with no

more evidence than was presented at the original trial. Cf. *Com. v. Hays,* 195 Pa., supra.

To summarize: There was ample justification for the findings and conclusions of the lower court and we find no abuse of discretion or error of law.

The order of the Court of Oyer and Terminer of Lackawanna County is affirmed.