Commonwealth *v.* Ahearn, Appellant.

312

Argued April 21, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*John R. Miller, Jr.,* with him *Richard M. Sharp,* for appellant.

*John A. Harris,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 19, 1966:

Defendant, while represented by three lawyers, pleaded guilty to the indictment charging him with murder. The Judge, sitting without a jury, found him guilty of murder in the first degree, and sentenced him to life imprisonment. Defendant's motion for a new trial and in arrest of judgment were dismissed by the lower Court. From the judgment of sentence defendant took this appeal.

This was one of the most brutal, senseless murders ever committed. The details are so gruesome that we shall only outline them.

Defendant met the victim, Betty Sharkey, for the first time in a Bellefonte bar on the evening of June 8, 1963. After several hours of drinking at various bars, they decided in the early morning hours of June 9th to look for a motel room to spend the night. Failing in their attempts to secure a room, the victim suggested that the defendant drive his car to a secluded field just off a secondary road in Patton Township, Centre County, in order to have sexual intercourse. When they arrived there they both removed their clothing and in the language of the defendant, he started "loving her up." For some unknown reason, she changed her mind about having intercourse and struck him with her pocketbook to prevent it. For some un-

known and unexplained motive or reason he punched Betty several times on her head and face with his fists, pushed her out of the car and then stabbed her with a penknife, inflicting some 90 wounds on her body. After this he dressed, then slashed her from her throat to her abdomen, drove his car over her body twice and then drove off, leaving her naked, lifeless body at this isolated spot. In a clever attempt to avoid detection, he washed and hid his bloodstained clothing and put on another suit.

When apprehended several hours later, he first denied any knowledge of the killing, but shortly thereafter acknowledged his guilt orally and in writing.

Defendant-appellant has two principal and several minor contentions; they are so interrelated that they will all be considered together.

We note at the outset that defendant did not take the witness stand; instead he relied upon the testimony of two psychiatrists and one psychologist who, in the last analysis, based their opinions to a large extent *upon defendant's self-serving, unsworn, uncorroborated statements to them about his prior life and his actions and reactions, some of which are fantastic.* Neither defendant nor his counsel nor his witnesses contend that he was insane under the M'Naghten Rule. Instead, he contends (1) that there was no motive for his crime, and (2) that because of his mental condition, which was induced by feeling the breasts of his victim, or by the tremendous pleasure he got from hearing women scream in agony when he beat them up,* he could not form an intent to kill. In other words,

---

* The psychiatrists first testified that defendant was stimulated to violence by feeling women's breasts, but in other parts of their testimony they seemed to base their opinion of defendant's "assaultive" stimulation from beating up women. From an analysis of *all* their testimony, it is not clear which was the motivating, stimulating cause.

defendant contends that because of his mental condition, his excitement, and his reactions when women were involved, *it was impossible for him to form a specific intent to take a human life,* and consequently he could not be convicted of any crime higher than murder in the second degree. Defendant further contends that under a plea of guilty (a) there is a presumption of fact that the murder was only murder in the second degree and (b) that that degree must be so found by the Court unless the Commonwealth establishes, beyond a reasonable doubt, all the requisite elements of murder in the first degree, and (c) this the Commonwealth failed to do.

Neither defendant's psychiatrists nor any of his witnesses, we repeat, testified that defendant was insane under the M'Naghten Rule. The testimony of defendant's experts, if believed, would establish an irresistible impulse to violence in certain sexual situations. Psychiatric names or definitions vary or change almost as rapidly as "bridge conventions"; and the use of terms such as "irresistible impulse," or "diminished responsibility", or "inability to control oneself", or "temporary partial insanity", or *various kinds of psychopaths,* are not sufficient to change what the psychiatrists used to call and what, in legal language, has always been called, an irresistible impulse.

We note that defendant in his statement of the questions involved on this appeal, does not call or characterize his aforesaid actions and his emotional reactions by the name of "irresistible impulse", but thus phrases it: "Under the circumstances above, where defendant asserted neither the defense of insanity under the M'Naghten Rule, nor irresistible impulse, but that his actions were motivated by a deep-seated anxiety, arising from repeated traumatic, pre-adolescent sexual experiences which, by their repetitive character, produced a conditioned reflex type of conduct, which erupt-

ed when triggered by specific stimuli, resulting in a mental state which temporarily destroyed his ability to premeditate and form specific intent, is such evidence admissible to disprove the existence of intent and premeditation?" Premeditation and a specific intent to kill are, as we shall see, essential elements of first degree (non-felony) murder.

The defendant and the Commonwealth differ so widely about the pertinent and correct legal principles involved in this case and the trial Judge seemed so doubtful about several applicable principles of law, as well as the effect of psychiatric testimony, that we shall briefly review and reiterate the established law in Pennsylvania. In this way we shall answer all of defendant's contentions.

It is well established that if a defendant pleads guilty to murder, he must plead guilty to murder generally, and cannot plead guilty to either murder of the first degree or murder of the second degree. A plea of guilty to an indictment for murder constitutes an admission or confession of guilt of the crime of murder, with the degree of murder to be determined, and the penalty fixed, by the Court. The law is not clearly settled as to whether on such a plea there is *a presumption or an inference* of second degree murder—the distinction between a presumption of fact and an inference is often slight and shadowy. Nevertheless, all the cases agree that after a plea of guilty to murder, the burden is upon the Commonwealth to produce direct and/or circumstantial evidence which, from the facts and circumstances and all reasonable inferences therefrom is legally sufficient to prove, beyond a reasonable doubt, that the killing amounted to murder in the first degree: *Commonwealth ex rel. Andrews v. Russell,* 420 Pa. 4, 215 A. 2d 857; *Commonwealth v. Kurus,* 371 Pa. 633, 637, 92 A. 2d 196; *Commonwealth v. Samuel Jones,* 355 Pa. 522, 525, 50 A. 2d 317.

In *Commonwealth v. Finnie,* 415 Pa. 166, the Court epitomized the law of murder (pages 170-172): "In Commonwealth v. Carroll, 412 Pa., supra [525, 194 A. 2d 911] the Court, quoting from Commonwealth v. Gooslin, 410 Pa., supra, pertinently said (pages 530-531): '. . . "Murder", . . . "is defined as an unlawful killing of another with malice aforethought, express or implied." The legislature divided murder into two classifications, murder in the first degree and murder in the second degree; and provided that (1) all murder perpetrated by poison or lying in wait; or by any other kind of wilful, deliberate [and] premeditated killing, or any murder which shall be committed in the perpetration of or attempt to perpetrate certain specified felonies [arson, rape, robbery, burglary, or kidnapping], is murder in the first degree and (2) every other kind of murder is murder in the second degree: Act of June 24, 1939, [P. L. 872, as amended].

" ' " " 'Malice express or implied is [the hallmark] the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty: [*Commonwealth v. Kirkland,* 413 Pa. 48, 195 A. 2d 338; *Commonwealth v. Carroll,* 412 Pa., supra; *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861; *Commonwealth v. Buzard,* 365 Pa. 511, 76 A. 2d 394; *Commonwealth v. Boden,* 399 Pa. 298, 159 A. 2d 894.] Legal malice may be inferred and found from the attending circumstances. [Malice is present if the defendant had an intent (to kill or) to do the deceased serious bodily harm: Commonwealth v. Drum, supra; Commonwealth v. Dorazio, 365 Pa. 291, 74 A. 2d 125.]

" ' " ' "The test of the sufficiency of the evidence— irrespective of whether it is direct or circumstantial—

is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, . . . [citing numerous authorities]. . . ." ' " '

" 'In Commonwealth v. Kravitz, 400 Pa. 198, 161 A. 2d 861, the Court said (page 208) : " '. . . ". . . Proof by eye witnesses or direct evidence of the corpus delicti or of identity or of the commission by the defendant of the crime charged is not necessary. 'It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: [citing numerous authorities].' " ' "

" 'In Commonwealth v. Tyrrell, 405 Pa. 210, 174 A. 2d 852, the Court said (pages 212-213) : "The essential difference in a non-felony murder-killing between murder in the first degree and murder in the second degree is that *murder in the first degree requires a specific intent to take the life of another human being*:* Commonwealthv. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Dorazio, 365 Pa., supra; Commonwealth v. Malone, 354 Pa., supra; Commonwealth v. Chapman, 359 Pa. 164, 58 A. 2d 433; Commonwealth v. [Samuel] Jones, 355 Pa. 522, 50 A. 2d 317; Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823."

" 'The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom, *and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being*: Commonwealth v. Tyrrell, 405 Pa., supra; Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65; Commonwealth

---

* Italics throughout, ours.

v. Nelson, 398 Pa. 359, 152 A. 2d 913; Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Heller, 369 Pa. 457, 87 A. 2d 287; Commonwealth v. [Samuel] Jones, 355 Pa. 522, 50 A. 2d 317.'" Accord: *Commonwealth v. Kirkland,* 413 Pa., supra (pp. 63-65); *Commonwealth v. Carroll,* 412 Pa., supra.

In *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728, the Court aptly said (pages 349-350):

"There is not the remotest merit to defendant's contention that because of his deficient mentality, the Court did not have the power to convict him of murder in the first degree.

"In Commonwealth v. Smith, 405 Pa. 456, we sustained a verdict of guilty of murder in the first degree with penalty of death, even though defendant was a sexual psychopath. We there said (pages 459-460): 'This Court has sustained a verdict of first degree murder with penalty of death where defendant allegedly had *an irresistible impulse,* was a moron or a mental defective or a sexual pervert *or a psychopathic personality,* or had been previously confined in the hospital for the criminal insane for 14 years, or was a schizophrenic psychopath or was an unstable, mentally defective moron, or was feeble-minded: Commonwealth v. Leamer, 386 Pa. 485, 126 A. 2d 409; Commonwealth v. Cole, 384 Pa. 40, 119 A. 2d 253; Commonwealth v. Gossard, 383 Pa. 239, 117 A. 2d 902; Commonwealth v. Elliott, 371 Pa. 70, 89 A. 2d 782; Commonwealth v. Carluccetti, 369 Pa. 190, 85 A. 2d 391; Commonwealth v. Givens, 363 Pa. 141, 69 A. 2d 142; Commonwealth v. Neill, 362 Pa. 507, 67 A. 2d 376; Commonwealth v. Howell, 338 Pa. 577, 13 A. 2d 521; Commonwealth v. Hawk, 328 Pa. 417, 196 A. 5; Commonwealth v. Stabinsky, 313 Pa. 231, 169 A. 439.'"

Defendant in the instant case makes the same contentions as were made in the aforesaid cases, but instead of calling himself a mental defective or a sexual

pervert, or some kind of a psycopath, or that he had an irresistible impulse, he contends that his is a case of "diminished responsibility." By whatever name psychiatrists, or doctors or lawyers call it, an inability to control one's self under certain circumstances is legally insufficient to justify an acquittal of murder, or a reduction of a first degree murder killing to second degree.

These cases not only support and justify the verdict and sentence in this case but indicate that any lesser verdict would be a travesty on Justice. Nevertheless we shall consider and analyze defendant's contentions which are based upon the testimony of his two psychiatrists and a psychologist who testified that in their opinion defendant's stirred-up mental condition prevented his forming a specific intent to kill Betty.

In *Commonwealth v. Tyrrell*, 405 Pa., supra, the Court sustained a verdict of first degree murder with penalty of life imprisonment and pertinently said (pages 219-221) : "As a result Dr. Coleman determined that the defendant was psychotic since teen age and that he was so emotionally upset on March 7, 1960, that 'he would react to an impulse to pick up a loaded shotgun resting at his elbow and fire it at his wife, and that at that time he had no intent to take his wife's life.'

"The doctrine of 'irresistible impulse' or in the modern psychiatric vernacular 'inability to control one's self', whether used to denote legal insanity, *or as a device to escape criminal responsibility for one's acts or to reduce the crime or its degree, has always been rejected in Pennsylvania.* In Commonwealth v. Neill, 362 Pa. 507, 67 A. 2d 276, Mr. Chief Justice STERN said: 'Apart from the fact that "confusional insanity" is apparently an antiquated and discarded theory and that the proposition that there could be such a thing as a momentary insanity was sharply challenged by an ex-

pert witness for the Commonwealth, it would seem quite obvious that defendant's witness failed to differentiate between a mere temporary frenzy or *emotional excitation*, and insanity within the legal meaning of that term, namely *inability, from disease of the mind*, to understand the nature and quality of the act and to distinguish between right and wrong with respect to it: Commonwealth v. Szachewicz, 303 Pa. 410, 416, 417, 154 A. 483, 485; Commonwealth v. Lockard, 325 Pa. 56, 60, 188 A. 755, 757. . . . Certainly neither social maladjustment, *nor lack of self-control*, nor impulsiveness, nor psycho-neurosis, *nor emotional instability*, nor chronic malaria, nor all of such conditions combined, constitute insanity within the criminal-law conception of that term.' [Emphasis in original]

"In Commonwealth v. Woodhouse, 401 Pa. 242, 164 A. 2d 98, defendant shot and killed his adopted daughter; this Court affirmed his conviction of murder in the first degree [with penalty of life imprisonment]. Three psychiatrists testified that *defendant, at the time of the commission of the killing, was suffering* from a paranoid psychosis, or from a delusion, or *from a severe psychosis* accompanied by *serious delusions*, or was a paranoid schizophrenic and at times did not know the difference between right and wrong *and acted under an irresistible impulse* and hence was insane. This Court, in a learned opinion by Mr. Justice EAGEN, analyzed at length and firmly rejected, as this Court had often previously done, the theory of irresistible impulse as a defense in an indictment for murder. Once again this Court approved the M'Naghten Rule, which 'was adopted as the law in Pennsylvania (Commonwealth v. Mosler, 4 Pa. 264 (1846) ) and has become firmly established and imbedded in the body of the law of this Commonwealth ever since. [citing many cases, including the recent case of Commonwealth v. Novak, 395 Pa. 199, 150 A. 2d 102 (1959) ].' "

In *Commonwealth v. Carroll,* 412 Pa. 525, supra, the Court aptly said (pages 534-536) : "Defendant's most earnestly pressed contention is that the *psychiatrist's opinion* of what *defendant's state of mind must have been and was at the time of the crime, clearly establishes not only the lack but also the legal impossibility of premeditation.* Dr. Davis, psychiatrist of the Allegheny County Behavior Clinic, . . . gave *his opinion* that 'rage', 'desperation', and 'panic' produced *'an impulsive automatic reflex type of homicide, . . . as opposed to an intentional premeditated type of homicide.* . . . Our feeling was that if this gun had fallen to the floor he wouldn't have been able to pick it up and consummate that homicide. And I think if he had to load the gun he wouldn't have done it. This is a matter of opinion, but this is our opinion about it.'

"There are three answers to this contention. First, as we have hereinbefore stated, neither a Judge nor a jury has to believe all or any part of the testimony of the defendant or of any witness. Secondly, the opinion of the psychiatrists was based to a large extent upon statements made to them by the defendant, which need not be believed and which are in some instances opposed by the facts themselves. Thirdly, *a psychiatrist's opinion of a defendant's impulse or lack of intent or state of mind is, in this class of case, entitled to very little weight,* and this is especially so when defendant's own actions, or his testimony or confession, or the facts themselves, belie the opinion.

"The rule regarding the weight of expert testimony in this class of case is well settled. '. . . "[E]xpert testimony is entitled to little weight as against positive facts. Expert medical opinions are especially entitled to little or no weight when based upon insufficient or (partly) erroneous facts or a feigned state of mind or an inaccurate past history, or upon unreasonable deductions, . . ." [Commonwealth v. Gossard,

385 Pa. 312, 123 A. 2d 258; Commonwealth v. Patskin, 375 Pa. 368, 375, 100 A. 2d 472].' Commonwealth v. Jordon, 407 Pa. 575, 583, 181 A. 2d 310.

"In Commonwealth v. Woodhouse, 401 Pa. 242, 164 A. 2d 98, we held that the jury *was free to disregard expert psychiatric testimony that defendant was insane at the time of commission of the killing,— which would have acquitted the defendant under the M'Naghten Rule*—in the face of testimony by lay witnesses who actually observed him and considered him to be sane at times when he was allegedly insane. Mr. Justice EAGEN, speaking for the Court, said (pages 259-260) : '. . . ". . . It must be kept in mind that an opinion is only an opinion. It creates no fact. Because of this, opinion evidence is considered of a low grade and not entitled to much weight against positive testimony of actual facts such as statements by the defendant and observations of his actions." ' See to the same effect: Commonwealth v. Melton, 406 Pa., supra; Commonwealth v. Heller, 369 Pa., supra."

It is too often forgotten that in criminal trials the opinion of a psychiatrist is based to a large extent *upon self-serving unsworn statements given him by the defendant as to his prior life and prior thoughts, actions and reactions, as to which there is no proof, no opportunity of cross-examination and usually no corroboration.* These factors are especially present in this instant case. Defendant's psychiatrist, Dr. Clark, based his conclusion that defendant could not form an intent to kill, largely on the following unsworn, uncorroborated statement given him by the defendant:

". . . He escorted about 75 or 100 women into the compound [in Korea] as near as he can recall. But only went out with about 25 or 30 and he explains this that because even though he would take them into the compound, other men would take over after that and become their companions. These women he beat

up, all these women with the exception of three. These three he had intercourse with, but he did not have any preliminary intimacies with them. After having relations with the first three women, the other men told him what they did, he had reference to preparatory intimacies and so on. *He had the urge to beat a woman after feeling her breasts. Mr. Ahearn stated that some women liked the beatings and that made him feel good* and sometimes he had an orgasm at the time. After he started beating the first woman, he did not want to have sexual relations with any more women, because he felt he got more out of it by beating and hearing them yell and scream for help."

This demonstrates more clearly than almost anything else could why the Courts of Pennsylvania believe that the opinion of a psychiatrist which is based in substantial part upon unsworn, uncorroborated self-serving statements of a criminal or an accused defendant—self-serving statements which are not even subject to cross-examination—who desires to escape conviction, is entitled to little weight and rarely ever forms a sound basis for the conclusion of the psychiatrist. Even defendant's psychiatrists cannot agree upon what impelled defendant to commit this terrible crime— whether it was feeling his victims' breasts, as they first testified, or whether it was a desire to beat them up in order to enjoy their screams for help. We hold that the psychiatric testimony offered in this case is not admissible (1) to absolve or exculpate and acquit a defendant of crime, or (2) to prove a lack of specific intent to kill, and thereby prohibit a verdict of murder of the first degree. This has always been the law of Pennsylvania. *Commonwealth v. Tyrrell,* 405 Pa., supra. We further hold that since the Act of December 1, 1959, P. L. 1621, 18 P.S. §4701, (popularly known as the Split Verdict Act), unless psychiatric testimony is introduced for the purpose of showing insanity under the

M'Naghten Rule, (a) it is admissible only after guilt has been determined by a jury or Court, and (b) is relevant and admissible thereafter only for the limited purpose of aiding the jury or Court in fixing the penalty.

In *Commonwealth v. Elliott,* 371 Pa. 70, 89 A. 2d 782, (which was decided before the Split Verdict Act) the Court pertinently said (pages 75-76) : "Defendant contends that because a criminal or murderer is a weak, unstable, aggressive, dangerous moron who is mentally deficient the sentencing Judge or Court (1) must consider his record during his entire life and particularly reports of every psychologist and psychiatrist who has examined him, and (2) must be *controlled* by these reports and impose a sentence in the case of murder in the first degree not higher than life imprisonment. This contention carries the theory or doctrine of *'diminished responsibility'* to an extreme and would vest in a psychiatrist and not in the Courts the right and power to determine and fix punishment for crimes. *Such a theory or philosophy would soon transfer the punishment of criminals from Courts to psychiatrists and would inevitably result in a further breakdown of law enforcement and eventual confusion and chaos. Fortunately our cases are opposed to such an undesirable result."*

Defendant also contends that since there was no motive for the killing, he should either be excused entirely or the crime could not amount to murder in any degree. This contention has often been rejected by the Court.

In *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861, the Court said (pages 216-217) : "In Commonwealth v. Novak, supra, the Court said (page 204) : ' "Evidence to prove motive, intent, plan or design are admissible [citing cases]." : Commonwealth v. Homeyer, 373 Pa. 150, 159, 94 A. 2d 743. However, "proof

of motive is always relevant but never necessary.":
Commonwealth v. Malone, 354 Pa. 180, 188, 47 A. 2d
445.' "

Defendant is an exceptionally dangerous criminal
who is a subtle but serious threat to law-abiding society.
The verdict, penalty and sentence of the lower Court
were undoubtedly justified and all of defendant's con-
tentions are devoid of merit.

Verdict and Judgment of sentence affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

Defendant pleaded guilty to murder. The homi-
cide was bizarre and barbarous. Defendant met the
victim at a bar and mutually decided upon sexual in-
tercourse, went in defendant's car to a secluded field,
undressed in the car at victim's suggestion, and began
preliminaries. Suddenly defendant began pounding the
victim in the face, pushed her out of the car, grabbed
a pen knife from the dash board, stabbed her ninety
times in rapid succession, concentrating on the breast
area, cut open her chest, got in the car and ran over
the victim twice. Defendant confessed to all this and
pleaded guilty to murder, i.e., unlawful homicide with
malice.

Pursuant to statute, a trial was held to determine
the degree of murder. The Commonwealth and defend-
ant agree, as does the majority, that the Common-
wealth must prove beyond a reasonable doubt that it
was murder in the first degree, i.e., the Comomnwealth
must prove beyond a reasonable doubt that the murder
was willful, deliberate and premeditated, sometimes
capsulized into the formula "murder with the specific
intent to take human life". In other words, the Com-
monwealth must prove beyond a reasonable doubt that
defendant's *state of mind* at the time of the murder
conformed to the state of mind required for first degree
murder.

The Commonwealth built its case in the classic way—showing a first degree murder state of mind from objective circumstances—use of a deadly weapon on a vital part of the body, the length of time it took to commit the crime giving time for deliberation and premeditation, (the Commonwealth admits that before defendant struck the first blow he had no intent to kill) and defendant's actions subsequent to the homicide. There is no serious dispute that the Commonwealth's evidence is *sufficient* to support a finding of first degree murder.

The defense introduced the testimony of a clinical psychologist and two psychiatrists. Their qualifications were not objected to. The admissibility of their testimony was objected to. *The trial judge conditionally admitted it and postponed ruling on its admissibility until the conclusion of the trial.* The psychologist and the psychiatrists had all personally examined defendant. Their testimony may be summarized as follows. In his preadolescent years defendant was forced into a continuous and unnatural sexual relationship with a person of the opposite sex. This person had him perform sadistic and painful sexual acts upon her breasts while they manipulated each others' genitals and while she yelled with pain. These experiences were traumatic and caused a confusion of the pleasure-pain principles in defendant's mind and an unconscious hostile reflex in defendant, which was triggered by the fondling of breasts. This psychiatric analysis was confirmed by the clinical psychologist's objective tests and the history of defendant's adult sex life, which was sadistic. It was the opinion of these experts that defendant's personality disorder was such that, at the time of the homicide, he did not have a specific intent to take human life—that the homicide was not deliberate and premeditated.

There was no attempt to use this evidence to show that defendant was legally insane under the M'Naghten rule at the time of the crime. Indeed, the experts testified that defendant knew the nature and quality of his acts and that they were wrong. Nor does the defense request us to change the M'Naghten rule. The defense is not asserting legal insanity—i.e., *a state of mind that would relieve defendant of criminal responsibility. All that the defense is asking is that the evidence be admissible for the purpose of determining whether there is a reasonable doubt that the state of mind required for first degree murder accompanied the homicide.* In other words, the defense is saying that the state of mind is a fact which the prosecution must prove beyond a reasonable doubt, and the evidence introduced is relevant to the existence or nonexistence of that fact and, therefore, should be admitted for that purpose.

The trial judge said in his opinion: "The acts of the defendant were so unusual—so bizarre—so senseless—so completely devoid of motive—that the explanation of the psychiatrists furnishes the only logical explanation. The court, who is the fact finding body in this instance, has chosen to believe the psychiatric explanation. We are therefore dealing with the situation where the testimony of the psychiatrists is accepted at face value and not where their testimony is swept under the rug as unworthy of belief." There follows, in the trial judge's opinion, a discussion of whether, notwithstanding its credibility, the testimony in question is legally admissible for the limited purpose of showing that a first degree murder state of mind did not, in fact, exist in defendant at the time of the homicide. The trial judge noted the lack of clarity in Pennsylvania law on the question—citing cases containing statements that would indicate either result. Frankly, after several readings of the opinion I cannot

tell for certain whether the trial judge admitted the evidence, but found it did not create a reasonable doubt, or whether he decided that under our law it could not be admitted, i.e., was not legally relevant to the ultimate fact in issue. In any event, he found defendant guilty of first degree murder. *The parties have proceeded on the assumption that the trial judge refused to weigh the defendant's evidence.* I think there is sufficient doubt as to what he did to send the case back to him if we decide that defendant's evidence should have been considered.

I do not find in the opinion of the majority any recognition of this problem. One of defendant's statements of the questions involved is: "On a plea of guilty to a charge of murder, is psychiatric testimony that the mental condition of the Defendant negated his ability to premeditate, admissible to establish that the homicide was not murder in the first degree?"

The Commonwealth's counter-statement of that question is: "After a guilty plea to a charge of murder, absent an insanity defense under the M'Naghten Rule, can psychiatric testimony be used to negate first degree murder?"

Both the statement and the counter-statement of the questions involved by the defendant and the Commonwealth indicate that the lower court refused to admit the testimony. But the majority opinion ignores that problem and decides the case as if the testimony had been admitted without sanctioning its admissibility and then decides that the evidence not in fact admitted was not of sufficient weight to overcome the Commonwealth's evidence of first degree murder.

I believe that the psychological and psychiatric evidence should be admitted for the purpose of showing that a first degree murder state of mind did not exist in spite of the fact that it does not show legal insanity. The weight and ultimate finding is for the trier of fact,

but I think the evidence should be considered. I base my belief on the following reasons: (1) Defendant's argument is logically impeccable. The prosecution is required to prove beyond a reasonable doubt that a certain specific state of mind (cold bloodedness) existed in defendant at the time of the homicide, and defendant's evidence is *logically very relevant* on that issue. (2) Other jurisdictions *that firmly adhere to M'Naghten's rule,* regarding insanity as a complete defense to criminal responsibility, nevertheless, admit this kind of evidence to show that the state of mind specifically required by the definition of first degree murder did not exist in defendant at the time of the crime. See e.g., California decisions: *People v. Henderson,* 386 P. 2d 677 (1963) ; *People v. Gorshen,* 336 P. 2d 492 (1959) ; *People v. Wells,* 202 P. 2d 53 (1949) ; Iowa: *State v. Gramenz,* 126 N.W. 2d 285 (1964) ; Colorado: *Battalino v. People,* 199 P. 2d 897 (1948) (containing many other cases) ; New Jersey: *State v. DiPaolo,* 168 A. 2d 401 (1961). (3) The evidence cannot be excluded on the basis of the general unreliability (as opposed to lack of weight in a particular case because of cross-examination or lack of foundation, etc.) of the "science" of psychiatry when one considers the universal acceptance of such evidence on the issue of legal insanity which *completely* negates criminal responsibility. (4) Evidence of intoxication, use of drugs, etc., is admitted where it is introduced for the purpose of creating a reasonable doubt regarding the existence of first degree murder state of mind. *Commonwealth v. McCausland,* 348 Pa. 275, 35 A. 2d 70 (1944). How can we admit such evidence in behalf of a willful intoxicant but not in behalf of an individual who, through no fault of his own, has a mental disorder? (5) All thoughtful commentators I have read have come to the same conclusion. See, e.g., Weihofen and Overholser, "Mental Disorder Affecting The Degree of a Crime",

56 Yale L. J. 959 (1947); Keedy, "A Problem of First Degree Murder: Fisher v. United States", 99 U. Pa. L. Rev. 267 (1950). (6) I have found no persuasive reasons against admission. One of the better reasons is set forth in one of our own early cases and is throughly discussed but rejected in 56 Yale L. J. 972-977—an article cited above.

I would hold that the evidence should be admitted, that we should remand the case with the direction that the judgment is affirmed if the trial judge states that he weighed the evidence and it did not create a reasonable doubt in his mind, but reverse for a new trial if he states that he did not weigh the evidence.

I dissent.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

It is a commonplace that hard cases make bad law, yet it is one that we need remember. There can be no doubt that this Court is now faced with a hard case. Unfortunately, in my opinion, the result reached represents bad law. Despite the brutality of the crime, despite the overwhelming evidence of the existence of the elements of murder in the first degree, despite my own evaluation of the psychiatric testimony here in dispute, I must dissent. In my view, the majority unwisely restricts the purpose for which psychiatric evidence may be admitted, and thereby binds the courts of this Commonwealth to a rule which is contrary to enlightened modern authority.

Although conceding that psychiatric testimony is admissible to assist in fixing the penalty following a finding of guilty of murder in the first degree,[1] the majority holds that such evidence is not competent and inadmissible on the issue of whether the accused acted

---

[1] See *Commonwealth v. Elliott*, 371 Pa. 70, 89 A. 2d 782 (1952); A.L.I. Model Penal Code §4.02(2) (Official Draft 1962).

with that state of mind necessary to support such a conviction. I am unable to agree with the majority's conclusion. I deem such evidence competent and admissible for both purposes.

When an accused pleads guilty to murder generally, the offense charged in the indictment becomes duly established as murder in the second degree. *Commonwealth v. Jones*, 355 Pa. 522, 525, 50 A. 2d 317, 319 (1947). In order to raise the offense to murder in the first degree, the Commonwealth has the burden of establishing beyond a reasonable doubt that the slaying was "willful, deliberate and premeditated. . . ."[2] Act of June 24, 1939, P. L. 872, as amended, 18 P.S. §4701; *Commonwealth ex rel. Andrews v. Russell*, 420 Pa. 4, 6, 215 A. 2d 857, 858 (1966); *Commonwealth v. Kurus*, 371 Pa. 633, 637, 92 A. 2d 196, 198 (1952); *Commonwealth v. Jones*, 355 Pa. 522, 525, 50 A. 2d 317, 319 (1947).

No citation of authority is necessary for the proposition that even an accused who has pleaded guilty to murder generally has the right to adduce evidence which, if believed by the factfinder, would rebut evidence of the Commonwealth that all the elements necessary to support a conviction of murder in the first degree were present. I therefore fail to understand why

---

[2] The full statutory definition of murder in the first degree is: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree. All other kinds of murder shall be murder in the second degree." Act of June 24, 1939, P. L. 872, as amended, 18 P.S. §4701. Since we are not here presented with murder committed by means of poison or by lying in wait, or with a murder committed in the perpetration of one of the enumerated felonies, murder in the first degree could only be predicated on a finding that the killing was willful, deliberate and premeditated.

the majority, even though recognizing that the state of mind of the accused is the additional factor in this case which the Commonwealth must establish in order to prove murder in the first degree, nevertheless concludes that psychiatric testimony is not competent on this issue. While reasonable men may differ as to the weight to be accorded psychiatric testimony, it cannot reasonably be said that such testimony is legally incompetent or legally irrelevant on the issue of state of mind. Particularly is this so when such testimony is competent when the defense of insanity is raised and the issue is whether the accused was sufficiently responsible for his conduct to be held accountable in the eyes of the law.[3] To hold that psychiatric testimony is competent for this purpose but not competent for the lesser purpose of negating the existence of that state of mind required to support a conviction of murder in the first degree is inconsistent and unjustified.

So long as the Legislature has elected to distinguish between degrees of murder and to define murder in the first degree as a slaying which was "willful, deliberate and premeditated", I believe that this Court should not preclude the use of psychiatric testimony to negate the inference that the accused acted with that state of mind. The most realistic rule devised to deal with the problem presently before this Court is that of The American Law Institute: "Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense." A.L.I. Model Penal Code,

---

[3] It should be noted, however, that this area of the law could also benefit from a fresh review by the judiciary. One court which has recently reviewed the area has adopted the A.L.I. Model Penal Code test of legal insanity. See *United States v. Freeman*, 357 F. 2d 1073 (2d Cir. 1966). I believe this to be a step in the right direction.

§4.02(1) (Official Draft, 1962). Equally relevant is the comment which immediately follows this rule: "if states of mind such as deliberation or premeditation are accorded legal significance, psychiatric evidence should be admissible when relevant to prove or disprove their existence to the same extent as any other relevant evidence."

Since it is not clear from the opinion of the court below that this evidence was admitted for the purposes here indicated, I would vacate the judgment there entered and remand so that the hearing judge could consider the psychiatric testimony on the issue of degree of guilt. If, after admitting the psychiatric testimony and considering it for the purpose of determining the degree of guilt of the defendant, the hearing judge concludes that such testimony is insufficient to rebut the Commonwealth's evidence of willfulness, deliberation and premeditation, I would affirm the finding of murder in the first degree entered below, since the record clearly indicates that the evidence adduced is sufficient to support such a finding. However, if after considering the psychiatric testimony, the hearing judge concludes that the testimony rebuts the Commonwealth's evidence of willfulness, deliberation and premeditation, a finding of murder in the second degree should be duly entered.

Mr. Justice JONES joins in this dissenting opinion.