# Commonwealth of Pennsylvania *v.* Edwin D. Heidler, Appellant.

*Practice, Supreme Court—Assignments of error—Charge of court—Rulings on evidence.*

When error is assigned to the charge of the court, the part of the charge referred to must be quoted, totidem verbis, and when the error assigned is to the admission or rejection of evidence, the specification must quote the full substance of the bill of exceptions or copy the bill in immediate connection with the specification.

*Criminal law—Murder—Insanity—Evidence—Burden of proof.*

To convict of murder of the first degree the commonwealth must prove beyond a reasonable doubt the unlawful killing and the fully formed purpose to kill. It need adduce no evidence whatever of the sanity of the prisoner; the law presumes that, and the presumption is conclusive in the absence of evidence to rebut it.

The burden of the proof of insanity is with the defense from the beginning, and is never shifted.

Insanity as a defense to a charge of murder must be established as any other fact by a fair preponderance of the testimony. A mere doubt as to sanity will not work an acquittal.

*Criminal law—Murder—New trial—Juror—Discretion of court.*

The Supreme Court will not reverse an order discharging a rule for a new trial in a murder case on the ground that one of the jurors when examined on his voir dire had falsely stated that he had not formed or expressed an opinion as to the guilt or innocence of the prisoner, where it appears that the trial court had carefully investigated the matter, and found that the allegation was not true. Nothing short of a very clear abuse of discretion would induce the Supreme Court to interfere with the judgment on such a ground.

Argued April 24, 1899. Appeal, No. 220, Jan. T., 1899, by defendant, from judgment of C. P. Erie Co., May T., 1896, No. 38, on verdict of guilty of murder of the first degree. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Indictment for murder. Before WALLING, P. J.

At the trial it appeared that the prisoner on May 1, 1896, shot and killed Levi H. Kreider. The defense was insanity.

On the subject of insanity the court charged in part as follows:

But to constitute a defense to a criminal charge by reason of insanity the defendant must have been at the time of the commission of the act of unsound mind to such an extent as to deprive him of the power to distinguish between right and wrong with reference to the act in question; or if he did know the distinction between right and wrong, he must, by reason of a diseased mind, have lost the power to control his actions at the time. For if a man have sufficient mind to distinguish between right and wrong and also sufficient will power to control his acts, so as to give him freedom of choice, [that is, so that he might have done different from what he did, then he is responsible before the law and should be punished for his criminal acts, even though he may not have had at the time an entirely sound mind. And while a slight departure from a well-balanced mind may be pronounced insanity in medical science, yet such a rule cannot be recognized in the administration of the law, when a person is on trial for the commission of a high crime. The just and necessary protection of society requires the recognition of a rule which demands a greater degree of insanity, to exempt from punishment.] [19]

But if the defendant at the time of the alleged offense had not sufficient capacity to know whether his act was right or wrong and whether it was contrary to law, he is not responsible; that would be general insanity so far as the act in question is concerned; and if it existed to such an extent and degree as to blind him to the natural consequences of his moral duty and to destroy his perceptions of right and wrong then he is entitled to an acquittal on the ground of insanity. And supposing the defendant was at the time able to distinguish between right and wrong, and yet was laboring under partial insanity, hallucination or delusion which drove him to the commission of the act as a duty of overwhelming necessity, is he in such case responsible for his act? If the delusion were of such a character as to induce the defendant to believe in the real existence of facts which were entirely imaginary, but which, if true, would have been a good defense, he would not be responsible; but if the defendant, although he labors under partial insanity, hallucination or delusion, did understand the nature and character of his acts, had a knowledge that it was wrong and criminal, and mental power sufficient to apply that knowledge to his own case, and

knew if he did the act he would do wrong, and would receive punishment; and, if, further, he had sufficient power of memory to recollect the relation in which he stood to others, and others stood to him; that the act in question was contrary to the plain dictates of justice and right, injurious to others, and a violation of the dictates of duty, he would be responsible.

A man must, therefore, labor under something more than a mere moral obliquity of perception, for it has been truly said that "a man whose mind squints, unless impelled to crime by this very mental obliquity, is as much amenable to punishment as one whose eye squints."

[No mere moral obliquity of perception will protect a person from punishment for his deliberate act. The jury shall be fairly satisfied with reference to the act in question, that his reason, conscience and judgment were so entirely perverted as to render the commission of the act a duty of overwhelming necessity.] [20]

Verdict of guilty of murder of the first degree, upon which sentence was passed.

*Errors assigned* among others were (19, 20) above instructions, quoting them; (25) in not granting a new trial on account of alleged misconduct of a juror as stated in the opinion of the Supreme Court; various specifications as to the charge, but not quoting the charge totidem verbis, and various rulings on evidence, but not quoting the bill of exceptions.

*J. Ross Thompson*, of *J. Ross Thompson & Son*, with him *U. P. Rossiter*, for appellant, cited as to the misconduct of the juror: Long v. State, 22 S. W. Rep. 409; Chartz v. Territory (Ariz.), 32 Pac. Rep. 166; United States v. Fries, 3 Dall. 515.

*C. L. Baker*, with him *Paul A. Benson*, district attorney, for appellee, cited McClain v. Com., 110 Pa. 263; Com. v. Roddy, 184 Pa. 274.

OPINION BY MR. JUSTICE FELL, May 8, 1899:

Thirteen, at least, of the twenty-six assignments of error are in entire disregard of the mandatory rules of this Court, which require that when error is assigned to the charge of the court

the part of the charge referred to must be quoted, totidem verbis, and that when the error assigned is to the admission or rejection of evidence the specification must quote the full substance of the bill of exception or copy the bill in immediate connection with the specification. The object of these rules and the reasons upon which they are founded have been fully stated in Battles v. Sliney, 126 Pa. 460, and in Com. v. Werntz, 161 Pa. 591. In the latter case it was said by our Brother MITCHELL: "The assignments are the pleadings of this court, and the only part of the case that remains of record after the remittitur to the court below. They should therefore be self-explanatory and self-sustaining, giving in each assignment separately the offer, with so much of the proceeding or accompanying evidence as is necessary to the proper understanding of the offer, the ruling of the court upon it, and if testimony objected to be admitted, so much of it as may suffice to show why it was injurious to the party objecting."

Because of the gravity of the crime of which the appellant has been convicted we have looked beyond the assignments to see whether any error calling for reversal was committed at the trial. We find quoted, in connection with the printed argument of counsel, a part of the testimony on which the rulings of the court as to the competency of jurors were based, but that part only which is favorable to the appellant's contention. The balance of the testimony on the subject, which so fully sustains the rulings as not to leave any question open even for argument, and which shows that the assignments are as defective in substance as in form, has been wholly omitted.

The assignments which are good in form are without merit. They relate mainly to the burden of proof of the defense of insanity. The learned judge properly held that the burden of proof of insanity was with the defense from the beginning, and that it never shifted; that insanity was to be established as any other fact by a fair preponderance of testimony, and that a mere doubt as to sanity would not work an acquittal. The rulings and the instructions upon the subject were in entire accord with the principles stated in Ortwein v. Com., 76 Pa. 414; Coyle v. Com., 100 Pa. 578; Com. v. Gerade, 145 Pa. 289; Com. v. Woodley, 166 Pa. 463; and in the quite recent case of Com v. Wireback, 190 Pa. 138, in which it was said by our Brother

DEAN : " To convict of murder of the first degree, the commonwealth must prove beyond a reasonable doubt the unlawful killing and the fully formed purpose to kill; it need adduce no evidence whatever of the sanity of the prisoner ; the law presumes that, and the presumption is conclusive in the absence of evidence to rebut it. If the accused alleges insanity he must establish it by fairly preponderating evidence or the presumption of sanity which the law raises stands unshaken. . . . There is no middle ground which the law recognizes ; nor does a doubt of sanity reduce the grade of the crime to murder of the second degree. . . . Either the offense of defendant is wholly excused because the jury is satisfied by the preponderance of evidence of his irresponsibility, or he is guilty because the evidence fails to so satisfy them." We have quoted from the opinion at length because it clearly expresses the principles of our decisions on the subject under consideration.

The rule for a new trial, on the ground that one of the jurors when examined on his voir dire had falsely stated that he had not formed or expressed an opinion as to the guilt or innocence of the prisoner, was discharged after a careful investigation ·by the court, and a finding by it from the testimony produced that the answers of the juror were honestly made and that he had not prejudged the case. Nothing short of a very clear abuse of discretion would induce us to interfere with the judgment on this ground. We are satisfied by a careful examination of the testimony that the rule was properly discharged, and that in this matter, as in all others connected with the trial, every right of the appellent was carefully observed, and that he had a fair and impartial trial according to law.

The judgment is affirmed, and it is directed that the record be remitted to the court below that the sentence may be carried into execution according to law.