# Commonwealth v. Barner, Appellant.

*Criminal law—Murder—Insanity.*

To convict of murder of the first degree the commonwealth must prove beyond a reasonable doubt the unlawful killing and the fully formed purpose to kill, and it need adduce no proof whatever of the sanity of the prisoner; the law presumes that, and the presumption is conclusive in the absence of evidence to rebut it. If the accused alleges insanity, he must establish it by fairly preponderating evidence, or the presumption of sanity which the law raises stands unshaken. There is no middle ground which the law recognizes; nor does a doubt of sanity reduce the grade of the crime to murder of the second degree. From the very nature of the mental disease there can be no grading of it by degrees so as to accord with a degree in crime. Either the offense of defendant is wholly excused, because the jury is satisfied by the preponderance of evidence of his irresponsibility, or he is guilty, because the evidence fails to so satisfy them.

*Appeals—Assignments of error—Evidence.*

Assignments of error to the exclusion of testimony which do not quote the testimony excluded, will be disregarded.

*Criminal law—Murder—Insanity—Juror—Voir dire.*

At a murder trial it is improper to ask a juror, sworn on his voir dire, the question: "Have you any opinion or prejudice against the prisoner's plea of insanity where the insanity is due to an alleged injury of the head?"

In Pennsylvania, a person charged with murder who sets up the defense of insanity must establish his insanity by a preponderance of evidence. The rule adopted by the Supreme Court of the United States in Davis v. United States, 160 U. S. 469, that if from all the evidence the jury have a reasonable doubt of the prisoner's insanity they must acquit, is not the law in Pennsylvania. A failure to charge the jury in accordance with the rule of the federal courts, does not impinge the federal constitution by depriving the prisoner of his life without due process of law.

Argued April 16, 1901. Appeal, No. 12, May T., 1901, by defendant, from judgment of O. & T. of Dauphin Co., March T., 1900, No. 98, on verdict of guilty of murder in the first degree, in case of Commonwealth v. Elmer E. Barner. Before McColLUM, C. J., MITCHELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Indictment for murder. Before SIMONTON, P. J.

The facts are fully stated in the opinion of the Supreme Court.

When W. R. Deibler, a juror, was sworn on his voir dire, the court refused to allow him to answer the question: "Have you any opinion or prejudice against the prisoner's plea of insanity where the insanity is due to an alleged injury of the head?" Exception for defendant. [17]

The jury returned a verdict of guilty of murder in the first degree upon which judgment of sentence was passed.

*Errors assigned* (1–34) sufficiently appear by the opinion of the Supreme Court.

*Meade D. Detweiler,* for appellant.—In order to entitle a defendant charged with murder to an acquittal on the ground of insanity, it is only necessary that his irresponsibility should be established by the fairly preponderating weight of the evidence: Com. v. Gerade, 145 Pa. 289; Com. v. Woodley, 166 Pa. 463; Com. v. Heidler, 191 Pa. 375; Meyers v. Com., 83 Pa. 131; Pannell v. Com., 86 Pa. 260; Coyle v. Com., 100 Pa. 573; Ortwein v. Com., 76 Pa. 414; Kelch v. State, 55 Ohio, 146.

If the power to will be lacking and a person is drawn to the commission of a crime by an insane impulse which he cannot resist through defect of will, he is not responsible, though he knows his act to be wrong, and that he will be punished for it: Com. v. Winnemore, 1 Brewst. 356; Com. v. Shurlock, 14 Leg. Int. 33; Com. v. Smith, 6 Am. Law Reg. 257; Com. v. Freth, 3 Phila. 105; Com. v. Moore, 2 Pitts. 502; Ortwein v. Com., 76 Pa. 414; Parsons v. State, 2 S. Repr. 854; Green v. State, 43 S. W. Repr. 973; Stevens v. The State, 31 Ind. 485; Com. v. Rogers, 7 Metc. 500.

Furthermore, it must be borne in mind that the offense of which the prisoner believed the deceased guilty was one which is not only commonly believed to justify homicide, but was one which the law itself holds a partial justification, at least to the extent of reducing the crime from murder to manslaughter, if committed in the heat of the first discovery: Regina v. Kelly, 2 C. & K. 814; Maher v. People, 10 Mich. 212; State v. Neville, 6 Jones Law (N. C.) 423; Commonwealth v. Whitler, 2 Brewster (Pa.), 388; Lynch v. Commonwealth, 77 Pa. 205.

Inquiring into the mental condition of the immediate family, ancestors and relatives of the person whose sanity is in question has always been permitted: Baxter v. Abbott, 7 Gray, 71; Commonwealth v. Winnemore, 1 Brewster, 356; Walsh v. People, 88 N. Y. 458; Prentis v. Bates, 17 L. R. A. 494.

Prisoners in challenging jurors may challenge them as to their knowledge of circumstances, expressions, opinion and prejudices, and the juror is bound to disclose what he may know at any time and for the accused to cross-examine and to explain or contradict his testimony: Howser v. Commonwealth, 51 Pa. 332; Staup v. Commonwealth, 74 Pa. 458; Allison v. Commonwealth, 99 Pa. 17.

As a result of the trial, the defendant has been deprived of his liberty without due process of law, and, if the judgment is affirmed, will be deprived of his life without due process of law, in violation of the first section of the fourteenth amendment to constitution of the United States: Ex parte Ulrich, 42 Fed. Repr. 587; Leeper v. Texas, 139 U. S. 462; Bolln v. Nebraska, 176 U. S. 83; Bohanan v. Nebraska, 118 U. S. 231.

*Albert Millar*, for appellee.—If the accused alleges insanity, he must establish it by fairly preponderating evidence, or the presumption of sanity which the law raises stands unshaken: Sayres v. Com., 88 Pa. 291; Com. v. Gerade, 145 Pa. 289; Com. v. Woodley, 166 Pa. 463; Com. v. Heidler, 191 Pa. 375; Com. v. Wireback, 190 Pa. 138; Meyers v. Com., 83 Pa. 131.

A juror on his voir dire may not be asked as to the character of the opinion he had formed about the prisoner's innocence or guilt, if he has stated that he could render a just verdict on the evidence, notwithstanding his opinion: Com. v. Van Horn, 188 Pa. 144; Staup v. Com., 74 Pa. 458.

OPINION BY MR. JUSTICE MESTREZAT, May 13, 1901:

Elmer E. Barner, the appellant, was a laborer and farmer and resided in Perry county, Pennsylvania until 1891 or 1892. He then was married and removed to Halifax township, Dauphin county, Pennsylvania, where he was engaged in farming until 1898. During the fall of that year he worked on a railroad as a laborer. In the spring of 1899 he removed to Parkston, South Dakota, where, shortly after his arrival, he was joined by his wife and three children. They resided with his sister for a few weeks and then went to housekeeping in a house purchased by him. During the time he was in the west, he was engaged at his trade as a carpenter. While there he accused his wife of having had improper relations in Pennsylvania with his brother, Irvin Barner, and with his brother-in-law, Isaac Miller. These accusations were frequently repeated. He alleged that the illicit connection was had in his own bed while he was under the influence of drugs administered by his wife. He told his wife he did not want to live with her. She said she would go east with him and satisfy him that his accusations of her infidelity were false. He sold his property in the west and on Monday January 9, 1900, he with his family left Dakota for the east and arrived at the home of his brother-in-law in Perry county, Pennsylvania on January 11, 1900. They remained there until the following Monday morning, when they went to Millersburg, Dauphin county. There the family separated, the children going direct to Isaac Miller's in Dauphin county, and the prisoner and his wife to Harrisburg. Here the prisoner, presumably in company with his wife, visited a pawn shop and purchased a re-

volver. That evening at 7:55 o'clock they left Harrisburg and went north, arriving at Halifax about 8.30 P. M. They were driven about a mile distant to the home of Isaac Miller, reaching there about 9:45 P. M. The children had preceded their parents there and with Mr. Miller and his wife were at the house when they arrived. Two of the children had retired, but the other child, Lottie Dimm, Mrs. Barner's daughter, and Mr. and Mrs. Miller were up and about the house. Barner and his wife entered the kitchen and shortly thereafter trouble arose between him and Miller. He charged the latter with having illicit relations with Mrs. Barner and insisted that they both should confess their guilt. Barner went into details of times and circumstances in his accusations against Miller as well as against others with whom he alleged his wife had improper relations. The talk or quarrel continued for more than two hours when suddenly Barner drew a revolver and shot and almost instantly killed Miller who was seated on the opposite side of the table. Barner remained during the night with other members of the family in the same room with the remains of the deceased. The following morning he was arrested and committed to jail at Harrisburg. He was tried in the court of oyer and terminer of Dauphin county, found guilty of murder of the first degree and duly sentenced on January 7, 1901.

The prisoner does not deny the killing, nor, as we understand, is it claimed that the ingredients of murder of the first degree do not exist, if the defense interposed does not avail the prisoner. The defense was delusional insanity and, as stated in the charge, was that the prisoner " was insane and that he was the victim of insane delusions originating in mental disease, and that this disease existed to such an extent as to overpower his reason and conscience and judgment so that he committed the act under an uncontrollable impulse, and is therefore not criminally responsible for it." The alleged delusion consisted in the infidelity of the prisoner's wife under peculiar circumstances with Irvin Barner, his brother, and with Isaac Miller, his brother-in-law. The trial resulted adversely to the prisoner and he has appealed.

The appellant has filed thirty-four assignments of error. The first eleven assignments are to excerpts from the charge of the court and to the answer to points for charge. From the twelfth to the nineteenth assignment inclusive, error is alleged in the

admission of, and in excluding and striking out, certain testimony; in excluding a question to a juror sworn on his voir dire and in refusing an exception to certain rulings on striking out testimony and on offers of testimony. The twentieth to the thirty-fourth assignment inclusive allege that parts of the charge and answer to points therein quoted are erroneous as being violative of the first section of the fourteenth amendment to the constitution of the United States.

It is unnecessary to discuss any of these alleged errors in the charge and answers to the points. The decisions of this court have determined them all adversely to the appellant. The learned trial judge not only followed those decisions in his charge but quoted in some instances their very language. He correctly stated the degree of evidence required to establish insanity, what insane delusions would relieve the defendant from guilt in killing Miller and upon whom the burden of establishing these delusions rested. We need refer to only a few of the numerous decisions on the subject.

In Commonwealth v. Mosler, 4 Pa. 264, Chief Justice GIB-SON delivering the opinion of the court, says : " It (insanity) must be so great as entirely to destroy his perception of right and wrong; and it is not until that perception is thus destroyed, that he ceases to be responsible. It must amount to delusion or hallucination, controlling his will, and making the commission of the act, in his apprehension, a duty of overruling necessity. . . . Partial insanity is confined to a particular subject, the man being sane on every other. In that species of madness, it is plain that he is a responsible agent, if he were not instigated by his madness to perpetrate the act. . . . The law is, that whether the insanity be general or partial, the degree of it must be so great as to have controlled the will of its subject, and to have taken from him the freedom of moral action."

Insanity was the defense set up in Sayres v. Commonwealth, 88 Pa. 291. The prisoner was convicted. The judgment was affirmed, this court remarking that " the case was tried with marked accuracy and care by the learned judge of the court below, and there is nothing to justify our interference." In his charge to the jury, Judge LUDLOW said: " If the prisoner at the bar, at the time he committed the act, had not sufficient

capacity to know whether his act was right or wrong, and whether it was contrary to law, he is not responsible. . . . The test in this instance, as you perceive, is the power or capacity of the prisoner to distinguish between right and wrong in reference to the particular act in question. . . . If the prisoner, although he labors under partial insanity, hallucination or delusion, did understand the nature and character of his acts, had a knowledge that it was wrong and criminal, and mental power sufficient to apply that knowledge to his own case, and knew if he did the act, he would do wrong and would receive punishment; if, further, he had sufficient power of memory to recollect the relation in which he stood to others, and others stood to him, that the act in question was contrary to the plain dictates of justice and right, injurious to others, and a violation of the dictates of duty, he would be responsible. . . . The jury must therefore, even though they believe the prisoner labored under a diseased and unsound state of mind, be satisfied that this diseased or unsound state of mind, existed to such a degree, that although he could distinguish between right and wrong, yet with reference to the act in question, his reason, conscience and judgment were so entirely perverted as to render the commission of the act in question a duty of overwhelming necessity. But, there is another species of delusion entirely distinct from those which we have just considered, which is recognized by the law, and which, when the jury believe that it clearly exists, will entitle the prisoner to an acquittal. I refer to that delusion by reason of which the prisoner commits the act under a fixed bona fide belief (which is a delusion), that certain facts existed which were wholly imaginary, but which, if true, would have been a good defense. . . . We say to you as the result of our reflections on this branch of the subject, that if the prisoner was actuated by an irresistible inclination to kill, and was utterly unable to control his will or subjugate his intellect, and was not actuated by anger, jealousy, revenge and kindred evil passions, he is entitled to an acquittal. As the law presumes sanity to be the normal condition of the prisoner, and insanity an abnormal condition, the burden rests upon him to prove his insanity, as an excuse for an act which would otherwise be criminal. The evidence, therefore, which is intended to es-

tablish this defense, must be satisfactory to the jury, and the conclusion such as fairly results from the evidence."

In Commonwealth v. Wireback, 190 Pa. 138, the prisoner relied upon insanity as his defense. Mr. Justice DEAN in delivering the opinion of the court says: "Defendant's first point, which raises the question, is substantially affirmed. The jury was told that if defendant committed the act under any delusion which controlled his will and made the commission of the act a duty of overruling necessity, the verdict should be not guilty on the ground of insanity. . . . To convict of murder of the first degree the commonwealth must prove beyond a reasonable doubt the unlawful killing and the fully formed purpose to kill; it need adduce no proof whatever of the sanity of the prisoner; the law presumes that, and the presumption is conclusive in the absence of evidence to rebut it. If the accused alleges insanity, he must establish it by fairly preponderating evidence, or the presumption of sanity which the law raises stands unshaken. . . . There is no middle ground which the law recognizes ; nor does a doubt of sanity reduce the grade of the crime to murder of the second degree. From the very nature of the mental disease there can be no grading of it by degrees so as to accord with a degree in crime. . . . Either the offense of defendant is wholly excused, because the jury is satisfied by the preponderance of evidence of his irresponsibility, or he is guilty, because the evidence fails to so satisfy them."

It will be observed that these decisions cover the objections to the charge as well as to the answer to the points. By reference to the parts of the charge complained of in the assignments, it will appear that the learned judge was clearly within all the reported decisions of this court and correctly stated the law applicable to the testimony produced on the trial of the cause.

The prisoner's first point, the subject of the tenth assignment, should have been affirmed, but its refusal did him no harm. Neither it nor the answer was read to the jury. In the general charge, however, the court told the jury that if the defense of insanity was made out, it would end the case. This was an affirmative reply to the point. The eleventh assignment alleges error in the part of the charge referring to and commenting upon the testimony of one expert on each side of the case. We do not agree with the appellant's counsel that that part of the

charge was one-sided or prejudicial to the prisoner. The learned judge simply called attention to the testimony, and directed the jury to consider it and the reasons on which the experts based their opinion. He distinctly disclaimed any intention of expressing an opinion upon the testimony referred to. The twelfth and thirteenth assignments might be disregarded under Rule 31, as they do not quote the testimony excluded. So far as we understand the testimony complained of, there is no merit in the assignments. The testimony embraced in the fifteenth assignment was properly stricken out. We cannot say that the rebutting testimony quoted and complained of in the fifteenth and sixteenth assignments was inadmissible. The statement of the trial judge shows that the defense offered evidence of general insanity for some years prior to the homicide and consequently the admission of the testimony in rebuttal was at least in the discretion of the court. The question put to the juror on his voir dire which is the subject of the seventeenth assignment was properly excluded under the authority of Commonwealth v. Van Horn, 188 Pa. 143. The eighteenth and nineteenth assignments allege error in the court's refusal to note an exception for the prisoner to the striking out of certain testimony and to the overruling of a question proposed to a witness. Neither of these errors is assigned as required by the rule of court and was not considered by appellant's counsel in his printed argument. From the information disclosed by the appellee's paper-book, we think they are without merit.

The remaining assignments (twentieth to thirty-fourth inclusive) allege error in parts of the charge and answer to points recited in former assignments on the ground that they are in violation of the first section of the fourteenth amendment to the constitution of the United States, which provides: " Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It is contended in support of these assignments that by reason of the errors alleged on the trial of the cause, the prisoner has been deprived of his liberty, and if the judgment is affirmed, will be deprived of his life without due process of law, in violation of the provision of the federal constitution. If we are correct in our conclusions, there was no error committed on the trial of the

prisoner. He was tried by a court of competent jurisdiction and in conformity with the constitution and laws of the state. He has therefore not been deprived of his liberty and, if execution of the judgment shall be carried out, will not be deprived of his life without due process of law.

The learned counsel for the prisoner urges that the court went beyond the authority of the adjudicated cases in charging that before the jury could acquit on the ground of insanity, "they must be satisfied that he was not responsible." This objection is not well taken. The effect and in most instances the language of the charge in this respect was, that before the jury could acquit on the ground of insanity, they must be satisfied by the preponderance of the evidence that the prisoner was not responsible for the killing. In his answer to the fifteenth and eighteenth points of the prisoner, the court told the jury that the insanity set up as a defense must be established by fairly preponderating evidence. This is sustained by all of our decisions.

It is also contended on behalf of the prisoner that the court erred in requiring him to establish his insanity by a preponderance of evidence. It is conceded that such is the doctrine of this court as laid down in numerous cases. It is maintained, however, that the rule is not in accord with the trend of modern judicial decisions and that the reasoning on which it is based is fallacious. It is claimed that the true rule in such cases is that if from all the evidence the jury have a reasonable doubt of the prisoner's sanity, they must acquit. Such was held to be the correct doctrine by the Supreme Court of the United States in Davis v. U. S., 160 U. S. 469. It is also contended that unless this court enforces that rule and the prisoner is tried and convicted in conformity with it, he will be deprived of his life without due process of law within the meaning of the fourteenth amendment to the federal constitution. We are not prepared to adopt the views suggested. By repeated decisions of this court the rule enunciated by it has been affirmed and we are not convinced that it is erroneous. The decisions of the Supreme Court of the United States on the subject are not of binding authority upon this court. Nor will a failure to comply with them and a conviction and execution of the prisoner in accordance with our own decisions on the subject, im-

pinge the federal constitution by depriving him of his life without due process of law. Such, we believe, is well settled law.

The nineteen points for charge presented to the court by the prisoner referred chiefly to insane delusions and were affirmed absolutely or with slight qualifications. The charge itself was explicit on both general and partial insanity, and with the answer to the points gave the jury full instructions for the determination of the questions presented for consideration under the facts of the case. We see nothing in the numerous assignments of error that would justify us in interfering with the judgment of the court below.

The judgment is affirmed, and it is ordered that the record be remitted to the court of oyer and terminer of Dauphin county that the judgment may be carried into execution according to law.