549 A.2d 503

COMMONWEALTH of Pennsylvania, Appellee,

v.

Bernadette REILLY, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1988.
Decided Oct. 17, 1988.

Michael S. Goodwin, Feasterville, John W. Packel, Philadelphia, for amicus—Defender Assoc. of Phila.

Leonard N. Sosnov, Philadelphia, for appellant.

Alan M. Rubenstein, Dist. Atty., Doylestown, Stephen B. Harris, Warrington, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION

NIX, Chief Justice.

The issue presented in this appeal is whether section 315 of the Pennsylvania Crimes Code, 18 Pa.C.S. § 315,[1] which places the burden of proving insanity upon the criminal defendant by a preponderance of the evidence, violates Article I, section 9 of the Pennsylvania Constitution, which assures all persons due process of law. Despite the requirement that the prosecution prove each element of the crime charged, we do not believe that section 315 improperly places the burden upon the defendant to prove an element of the offense; and thus we reject appellant's attack upon the insanity statute.

Bernadette Reilly, the appellant herein, was charged with criminal homicide, 18 Pa.C.S. § 2501, and endangering the welfare of a child, 18 Pa.C.S. § 4304, in the death of her newborn child. At the time of the child's death in 1983, appellant had been residing with the Hatton family in Croydon, Bucks County, for approximately three (3) years along with her son. During 1980 appellant had given birth to another child which she relinquished for adoption. Throughout the 1980 pregnancy she denied her condition, and, upon giving birth, she was warned by Mrs. Hatton that were she to again become pregnant out of wedlock, she would no longer be welcome in her home. As nature would have it, appellant once again became pregnant. So as not to be thrown into the streets, she would not acknowledge her condition, although several members of the Hatton family stated at trial that they were aware of her pregnancy. As the condition became more noticeable, she explained

---

1. Section 315 of the Pennsylvania Crimes Code provides in relevant part:

(a) **General rule.**—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.
18 Pa.C.S. § 315(a).

it as uncontrollable weight gain and later as a tumor. She failed to seek any type of prenatal care.

In the early morning hours of July 14, 1983, appellant gave birth to a live full-term female infant in an unattended home delivery. She informed no one of the birth, and spent most of the day in bed in a weakened condition caused by severe vaginal bleeding. Upon Mrs. Hatton's return that evening, appellant was persuaded to seek medical care for her condition. Appellant was admitted to Delaware Valley Medical Center where she continually denied having given birth. Nevertheless, hospital officials contacted Mrs. Hatton the following morning to inform her to search her home for the child which the officials believed appellant had delivered. A search of appellant's room revealed a green canvas garment bag containing a plastic bag in which the deceased infant had been wrapped. A further investigation of the room revealed a bloodied mattress which had been inverted, a book on childbirth which appeared to be blood-stained on the pages pertaining to the tying of the umbilical cord, and scissors ostensibly used to cut the cord. During police questioning following the search, appellant acknowledged that she gave birth to the child, but stated that the child did not move or cry, prompting her to shake the child.

At trial, the Commonwealth introduced the testimony of Dr. Halbert Fillinger, a forensic pathologist employed by the Philadelphia Medical Examiner's office. Dr. Fillinger had conducted an autopsy of the deceased infant on July 16, 1983, from which he concluded that the child died of various injuries, including a torn liver with blood in the abdominal cavity, contusions of the scalp with contusions of the brain, a bilateral subdural hemorrhage and a bilateral subarachnoid hemorrhage. He also noted that there had been very little skull molding and that the baby was prominently stained with meconium. He opined that the child had been born alive, and that the injuries were consistent with those inflicted by punching or hitting with a fist or blunt object. The Commonwealth also introduced a tape recording of a sodium amytol-induced interview with appellant wherein she

revealed that she did inflict blows upon the child's head and body.

The defense presented the testimony of Dr. Isidore Mihalakes, an independent forensic pathologist, in order to undermine the Commonwealth's theory of causation. Dr. Mihalakes, basing his conclusions in part upon Dr. Fillinger's autopsy report, stated that a subarachnoid hemorrhage may result from a decrease in oxygen to the brain and not necessarily from blows to the skull. He indicated that meconium staining also evinces a lack of oxygen and fetal distress.

Thereafter appellant presented the testimony of two mental health experts in furtherance of the issue of her sanity at the time of the incident. Dr. Arthur Boxer and Dr. Sharon Wainwright, psychiatrists who interviewed appellant with and without sodium amytol, both concluded that appellant did not know the nature and quality of her act and that she did not know what she was doing was wrong. Each doctor testified that appellant suffered a brief reactive psychosis at or immediately following the birth, causing her to break from reality. Under further questioning, Dr. Boxer stated that appellant's psychosis may not have developed until after the infanticide. Dr. Wainwright likewise testified that appellant was in touch with reality during the birth and that the break did not occur until after the infant's death. The Commonwealth presented no expert evidence as to the appellant's mental state at the time of the incident.

Based upon this evidence, the trial court sitting without a jury concluded that appellant had acted with recklessness and cruelty in taking the life of the child but did not form the specific intent to kill. Moreover, appellant had knowingly violated a duty of care with regard to the child. The court rejected the contention that appellant was unable to understand the wrongfulness or the nature and character of her act. It thus found her guilty of murder in the third degree and endangering the welfare of a child, and sentenced her to a period of incarceration of not less than 36

months nor more than ten years. The Superior Court affirmed by per curiam order entered October 23, 1986. 361 Pa.Super. 637, 517 A.2d 1366. We granted allocatur to consider the constitutionality of the insanity statute in light of the principles established in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Initially we note that appellant is not questioning the vitality of section 315 under notions of federal due process which stem from the fifth and fourteenth amendments to the United States Constitution. This very argument was unequivocally rejected, albeit in dicta, by the United States Supreme Court in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).[2] Therein the Court stated:

> [T]he Court confirmed that it remained constitutional to burden the defendant with proving his insanity defense when it dismissed, as not raising a substantial federal question, a case in which the appellant specifically challenged the continuing validity of *Leland v. Oregon.* This occurred in *Rivera v. Delaware,* 429 US 877, 50 LEd2d 160, 97 SCt 226 (1976), an appeal from a Delaware conviction which, in reliance on *Leland,* had been affirmed by the Delaware Supreme Court over the claim that the Delaware statute was unconstitutional because it burdened the defendant with proving his affirmative defense of insanity by a preponderance of the evidence. The claim in this Court was that Leland had been overruled by *Winship* and *Mullaney* [*v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ]. We dismissed the appeal as not presenting a substantial federal question. *Cf. Hicks*

**2.** *Patterson v. New York* involved the issue of whether a New York statute, which placed the burden upon the defendant to prove extreme emotional disturbance as an affirmative defense to a charge of second degree murder in order to reduce the charge to manslaughter, was unconstitutional. The Court, in an opinion authored by Justice White and joined by four other members of the Court, held that because the affirmative defense in question did not serve to negate any facts of the crime which the state had the burden of proving beyond a reasonable doubt, due process was not offended.

*v. Miranda,* 422 US 332, 344, 45 LEd2d 223, 95 SCt 2281 (1975).

*Id.* at 205, 97 S.Ct. at 2324, 53 L.Ed.2d at 289.

The Court thus reaffirmed the position it took in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). *See Hill v. Zimmerman,* 542 F.Supp. 700 (M.D.Pa.1982), *vacated on procedural grounds,* 709 F.2d 232 (3d Cir.1983).

Appellant concedes that section 315 passes muster under the federal constitution. She instead urges this Court to adopt an expansive interpretation to Article I, section 9 of the Pennsylvania Constitution. This proposition is not entirely without precedent, for we have on a number of occasions provided criminal defendants with greater protections under the provisions of our constitution than those furnished by their federal counterparts. *See, e.g., Commonwealth v. Sell,* 504 Pa. 46, 63–64, 470 A.2d 457, 466–467 (1983); *Commonwealth v. Tate,* 495 Pa. 158, 169, 432 A.2d 1382, 1387–88 (1981); *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975). *See also* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L. Rev. 489 (1977). Nevertheless, we do not believe this to be an appropriate situation for such a liberal construction of our own due process clause.[3]

A person attacking the validity of a statute bears a heavy burden. Every statute promulgated by the General Assembly is vested with a strong presumption of constitutionality. *See* 1 Pa.C.S. § 1922(3); *Parker v. Children's Hospital of*

**3.** Article I, section 9 of the Pennsylvania Constitution provides:
**Rights of accused in criminal prosecutions:**
In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

*Philadelphia,* 483 Pa. 106, 394 A.2d 932 (1978); *Lattanzio v. Unemployment Compensation Board of Review,* 461 Pa. 392, 336 A.2d 595 (1975). A court entertaining a constitutional challenge is constrained to enforce the statutory language absent a showing that the violation is clear, palpable and plain. *See Snider v. Thornburgh,* 496 Pa. 159, 166, 436 A.2d 593, 596 (1981), *citing Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 16, 331 A.2d 198, 205 (1975).

■ Appellant premises her attack upon the principle announced by the United States Supreme Court in *In re Winship, supra.* That principle of procedural due process, simply stated, is that a criminal defendant may not be convicted of the offense charged absent proof beyond a reasonable doubt of every fact necessary to constitute that offense.[4] This mandate was founded upon very sound societal and jurisprudential considerations.

The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.

397 U.S. at 363–364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375. Appellant contends that because one who is insane is not capable of formulating the *mens rea* required for a conviction of murder, it necessarily follows that the Common-

4. The notion of the prosecution proving every fact necessary to constitute the offense was not new to this Commonwealth at the time of *Winship,* for in the decision of *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959), this Court held that the presumption of innocence mandates a never-shifting burden upon the Commonwealth to prove every essential element of the offense beyond a reasonable doubt. That decision, however, was founded upon policy grounds and was not explicitly rooted in Article I, section 9 of the Pennsylvania Constitution.

wealth cannot prove the requisite mental state, an element of the offense, without first establishing the absence of insanity. This syllogism, if correct, would make sanity an implied element of the offense and require proof thereof by the Commonwealth beyond a reasonable doubt.

Our analysis of this argument begins with an overview of the defense of insanity as it has developed in this Commonwealth. It is now generally recognized that the first judicial consideration of this issue in this jurisdiction occurred in the case of *Commonwealth v. Mosler*, 4 Pa. 264 (1846). Speaking for the Court, Chief Justice Gibson addressed the jurors assembled to try the defendant with the following instructions:

A man may be mad on all subjects; and then, though he may have glimmerings of reason, he is not a responsible agent. This is general insanity; but if it be not so great in its extent of degree as to blind him to the nature and consequences of his moral duty, it is not defence to an accusation of crime. It must be so great as entirely to destroy his perception of right and wrong; and it is not until that perception is thus destroyed, that he ceases to be responsible. It must amount to delusion or hallucination, controlling his will, and making the commission of the act, in his apprehension, a duty of overruling necessity.

*Id.* at 266.

This language clearly reflected the "right and wrong" rule announced by the English Court of Queens Bench three years earlier in response to interrogatories submitted to the court by the House of Lords in the case of *Regina v. M'Naghten*, 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843). *See* Hovenkamp, *Insanity and Criminal Responsibility in Progressive America*, 57 N.D.L.Rev. 541, 544–5 (1981). This rule, now referred to as the M'Naghten Rule, has been consistently applied in this Commonwealth since *Mosler*, *see Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987); *Commonwealth v. Metzler*, 499 Pa. 122, 451 A.2d 1352 (1982); *Commonwealth v. Oblek*, 496 Pa. 519, 437 A.2d

1162 (1981); *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979); *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Melton*, 406 Pa. 343, 178 A.2d 728 (1962), *cert. denied* 371 U.S. 851, 83 S.Ct. 93, 9 L.Ed.2d 87; *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960); *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959); *Commonwealth v. Patskin*, 375 Pa. 368, 100 A.2d 472 (1953); *Commonwealth v. Carluccetti*, 369 Pa. 190, 85 A.2d 391 (1952); *Commonwealth v. Neill*, 362 Pa. 507, 67 A.2d 276 (1949); *Commonwealth v. Lockard*, 325 Pa. 56, 188 A. 755 (1937); *Commonwealth v. Szachewicz*, 303 Pa. 410, 154 A. 483 (1931); *Commonwealth v. Calhoun*, 238 Pa. 474, 86 A. 472 (1913), and has been codified with the enactment of section 315(b) of the Crimes Code.[5]

The allocation of the burden of proving insanity, however, has not enjoyed a status equal to the definition of that term. From the outset it was considered an affirmative defense to the crime charged, and thus could only be found by the factfinder where the defendant had introduced evidence sufficient to carry that burden. This was because of the underlying principle that each man is presumed sane.

The first recorded decision by this Court to address the issue of who should bear the burden was *Lynch v. Commonwealth*, 77 Pa. 205 (1873). Therein the Court summarily adopted as a correct statement of the law the following charge to the jury:

"The law of the state is, that where the killing is admitted and insanity or want of legal responsibility is alleged as an excuse, it is the duty of the defendant to satisfy the

---

5. Section 315(b) provides:

(b) **Definition**—For purposes of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.
18 Pa.C.S. § 315(b).

jury that insanity actually existed at the time of the act, and a doubt as to such insanity will not justify the jury in acquitting upon that ground. The law presumes sanity when an act is done, if no insanity is shown by the evidence, and when it appears a man was sane shortly preceding the act, and shortly after, the presumption of sanity exists at the time of the act, and no jury have a right to assume otherwise, unless evidence in connection with the act convinces them that the defendant was actually insane at the moment the act was committed...."

*Id.* at 213.

The Court expounded upon this ruling one year later in *Ortwein v. Commonwealth,* 76 Pa. 414 (1875).

If we now analyze the subject, we shall find that this is the only safe conclusion for society, while it is just to the prisoner. Soundness of mind is the natural and normal condition of men, and is necessarily presumed, not only because the fact is generally so, but because a contrary presumption would be fatal to the interests of society. No one can justly claim irresponsibility for his act contrary to the known nature of the race of which he is one. He must be treated and be adjudged to be a reasonable being until a fact so abnormal as a want of reason positively appears. It is, therefore, not unjust to him that he should be so conclusively presumed to be until the contrary is made to appear on his behalf. To be made so to appear to the tribunal determining the fact, the evidence of it must be satisfactory and not merely doubtful, as nothing less than satisfaction can determine a reasonable mind to believe a fact contrary to the course of nature. It cannot, therefore, be said to be cruel to the prisoner to hold him to the same responsibility for his act, as that to which all reasonable beings of his race are held, until the fact is positively proved that he is not reasonable.

\* \* \* \* \* \*

And if this reasoning were even less than conclusive, the safety of society would turn the scale. Merely doubtful evidence of insanity would fill the land with acquitted criminals. The moment a great crime would be committed, in the same instant, indeed often before, would preparation begin to lay ground to doubt the sanity of the perpetrator. The more enormous and horrible the crime, the less credible, by reason of its enormity, would be the evidence in support of it; and proportionately weak would be the required proof of insanity to acquit of it. Even now the humanity of the criminal law opens many doors of escape to the criminal. Then a wider door would be opened by the doubtful proof of insanity made still more open by the timidity of jurors, their loose opinions on the subject of punishment, and their common error that the punishment is the consequence of their finding of the truth of the facts, instead of the consequence of the crime itself. The danger to society from acquittals on the ground of a doubtful insanity demands a strict rule. It requires that the minds of the triers should be satisfied of the fact of insanity.

*Id.* at 424–425.

And so the rule placing the burden upon the proponent of the insanity claim remained constant for almost 100 years in Pennsylvania, even in the face of the United States Supreme Court decision in *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), which placed the onus upon the prosecution to prove sanity beyond a reasonable doubt in all federal criminal proceedings.[6] *See Commonwealth v. Woodley,* 166 Pa. 463, 31 A. 202 (1895); *Commonwealth v. Wireback,* 190 Pa. 138, 42 A. 542 (1899); *Commonwealth v. Heidler,* 191 Pa. 375, 43 A. 211 (1899);

---

6. *Davis* does not indicate whether the Court meant to announce a constitutional doctrine or simply a rule of federal procedure in promulgating the new rule. In *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the court unequivocally resolved this debate in favor of the latter proposition.

*Commonwealth v. Barner,* 199 Pa. 335, 49 A. 60 (1901); [7]
*Commonwealth v. Molten,* 230 Pa. 399, 79 A. 638 (1911);
*Commonwealth v. Calhoun, supra; Commonwealth v.
Sushinskie,* 242 Pa. 406, 89 A. 564 (1913); *Commonwealth
v. Scovern,* 292 Pa. 26, 140 A. 611 (1928); *Commonwealth
v. Iacobino,* 319 Pa. 65, 178 A. 823 (1935); *Commonwealth
v. Carluccetti, supra.*

The allocation of this burden did not come into question
until 1970 when the Court rendered its fragmented decision
in *Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970).
The lead opinion, authored by Justice Jones and joined by
Justice O'Brien, rejected the argument that sanity is neces-
sarily an element of every crime, and thus must be proven
by the Commonwealth: "To the contrary, I view insanity as
being the basis upon which society offers treatment rather
than punishment to one who has committed a crime." *Id.,*
440 Pa. at 11, 268 A.2d at 94. Justices Roberts and Pomer-
oy each disagreed with that view, and would have held that
*In re Winship, supra,* required that sanity, as an element
of the offense, must be proven beyond a reasonable doubt
by the prosecution. Initially the responsibility would be
upon the defendant to introduce some evidence sufficient to
rebut the presumption of sanity, but once this occurred, the
ultimate burden of persuasion would fall upon the Common-
wealth. Chief Justice Bell, joined by Justice Eagen, wrote a
dissenting opinion which, like the lead opinion, favored a
burden upon the defendant. Thus, by a four-to-two vote,
the old rule remained.

However, only four years later the position advocated by
Justices Roberts and Pomeroy in *Vogel* was adopted by a

7. Of particular note is this Court's decision in *Barner,* wherein the
 Court was presented with a due process challenge under the federal
 constitution. Acknowledging the *Davis* decision, the Court in *Barner*
 nevertheless summarily rejected the claim that the fourteenth amend-
 ment required proof beyond a reasonable doubt of the sanity of the
 accused before his life could be taken. We are not, however, pre-
 pared to base the instant decision upon *Barner* in light of the develop-
 ments in constitutional thought which have occurred since the time of
 *Barner,* and particularly because of that decision's failure to address
 the due process provision of our own constitution.

unanimous court in *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). Speaking for the majority, Justice O'Brien stated that "when the question of sanity is at issue and the presumption of sanity has disappeared the evidence must be sufficient to support a finding of sanity beyond a reasonable doubt.... When [a defendant] offers evidence of that insanity, the Commonwealth can no longer rely upon a presumption of sanity, but instead must offer evidence to show that he was sane." *Id.*, 456 Pa. at 482–483, 321 A.2d at 631–632. *See also, Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974) (burden of proving intoxication on Commonwealth beyond a reasonable doubt). No explanation, constitutional or otherwise, was given for changing the status quo; and it would be erroneous at this time to presume that the court intended anything other than to adopt a new rule of evidence in rendering the decision in *Demmitt*.[8]

Although the *Demmitt* rule of allocation was to be short-lived, it was consistently applied by this Court throughout its eight-year existence. *See Commonwealth v. Tempest*, 496 Pa. 436, 437 A.2d 952 (1981); *Commonwealth v. Green*, 493 Pa. 409, 426 A.2d 614 (1981); *Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995 (1979); *Commonwealth v. Vogel*, 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Delker*, 467 Pa. 305, 356 A.2d 762 (1976); *Commonwealth v. Moyer*, 466 Pa. 464, 353 A.2d 447 (1976); *Commonwealth v. Bruno, supra; Commonwealth v. Williams*, 463 Pa. 370, 344 A.2d 877 (1975); *Commonwealth v. Simms*, 462 Pa. 26, 333 A.2d 477 (1975).

8. In *Commonwealth v. Williams*, 463 Pa. 370, 344 A.2d 877 (1975), and *Commonwealth v. Moyer*, 466 Pa. 464, 353 A.2d 447 (1976), we indicated that our decision in *Demmitt may* have been constitutionally mandated in light of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Nevertheless we noted that the foundation of *Demmitt* was purely evidentiary. *See Williams*, 463 Pa. at 374 n. 2, 344 A.2d at 879 n. 2. Given the subsequent decision in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), our speculation on the constitutional underpinnings of *Demmitt* was clearly erroneous. *See Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977) (opinion in support of affirmance).

It was with this background that the General Assembly, in 1982, adopted the provision of the Crimes Code which is the target of the instant challenge. Under the clear language of section 315(a), the burden of proving insanity by a preponderance of the evidence has reverted back to the defendant in all criminal prosecutions. *See Commonwealth v. Sohmer*, 519 Pa. 200 n. 3, 546 A.2d 601 n. 3 (1988).

In order for appellant's attack upon section 315 to succeed, she must show that insanity negates the *mens rea* element of the offense charged. Although the burden is upon the Commonwealth to prove every element of its case, *see In re Winship* and *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959), the Commonwealth is not required to prove facts which would counteract any justification or excuse the defendant may have had for the commission of the crime. *See Patterson v. New York, supra; Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A.2d 108 (1970). Proof of facts which exonerate the accused from his guilt remain solely the province of the criminal defendant.

 The offense of murder is set forth at section 2502 of the Crimes Code. 18 Pa.C.S. § 2502. Although the statute does not define "murder," it is well-settled in this jurisdiction that before a person may be convicted of murder, the Commonwealth must show that the killing was committed at the very least with malice aforethought. *See Commonwealth v. Carter*, 481 Pa. 495, 393 A.2d 13 (1978); *Commonwealth v. Palmer*, 448 Pa. 282, 292 A.2d 921 (1972). For a person to be convicted of first degree murder, the killing must be specifically intended. 18 Pa.C.S. § 2502(a). Where the murder is neither intentional nor committed during the perpetration of a felony, it is murder of the third degree. Malice, as the gravamen of this latter classification, may be found to exist "where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868); *see also, Commonwealth v. Hornberger*, 441 Pa. 57, 61, 270

A.2d 195, 197 (1970); *Commonwealth v. Winebrenner*, 439 Pa. at 76, 265 A.2d at 110. The term thus contemplates much more than the specific intent to cause the demise of another.

The basic premise underlying appellant's constitutional objection is that the element of malice is so inextricably linked to the question of the accused's sanity that it cannot be proven if the accused is insane. In effect she contends that sanity is an element of the offense of murder.[9] Were this the case, the United States Supreme Court decision in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), would certainly require proof beyond a reasonable doubt by the Commonwealth.

In that decision, the Supreme Court invalidated a Maine statute which placed the burden upon the defendant to prove sudden provocation as a mitigating factor which would, if proven, reduce the offense of murder to that of manslaughter. Malice, as a necessary element of murder, had been defined by the Maine Supreme Court as an absence of considerable provocation. *State v. Lafferty*, 309 A.2d 647 (Me.1973). Despite the inclusion of this element in the murder statute, it was traditional for the burden of proving provocation, *i.e.*, disproving malice, to shift to the defendant upon proof by the prosecution of the other elements of the offense. The relationship between the malice element and the affirmative defense of provocation was direct and clear, and it was the shifting of the burden of proof of this element which violated due process.

No such direct relationship exists in the Pennsylvania legislative scheme between the *mens rea* element of mur-

9. We note that the United States Supreme Court decision in *Patterson v. New York, supra,* permits state legislatures a great deal of deference with regard to their drafting of criminal legislation. That case should not, however, be read as validating all legislative action, for the Court specifically noted that legislators might in some instances abuse their discretion to the detriment of the accused. *Id.,* 432 U.S. at 211 n. 12 97 S.Ct. at 2327 n. 12 53 L.Ed.2d at 292 n. 12. Therefore simply because the General Assembly has failed to expressly include sanity as an element of the offense does not permit us to forego our constitutional analysis of the statutory scheme.

der and the affirmative defense of insanity. Sanity of the accused is not a prerequisite to the Commonwealth's making out a case of third degree murder. It is instead addressed solely to penological concerns, *i.e.*, whether the defendant should be punished for his wrongdoing. In assessing sanity, a court is not concerned with whether the defendant committed the act (the *actus reus*)—in most cases where insanity is plead the defendant acknowledges his conduct—or with whether he had formed the prescribed mental state (the *mens rea*), but rather it is concerned with the societal judgment of whether the defendant should be held criminally responsible for his act. *See* Wharton, *Criminal Law* § 55 (7th ed.), *discussed in* Tighe, *Francis Wharton and the Nineteenth Century Insanity Defense: The Origins of the Reform Tradition*, 27 Am.J. Legal His. 223, 248 (1983). The insanity defense was thus borne of the notion that it would be unjust to punish one who was unable to comprehend the character or legality of his actions. As former Attorney General William French Smith recognized,

Historically, the insanity defense has been viewed as a mechanism for absolving those persons whose conduct would otherwise make them proper subjects of imprisonment or other criminal sanctions, but whose mental condition at the time of the conduct was such that society, through its laws, elects to forego the imposition of punishment. Thus, the manner in which the defense is defined involves policy choices concerning both the essential nature of criminal responsibility and the degree to which society will tolerate deviations, for any reason, from prescribed standards of conduct.

Through the definition of offenses, the criminal law attempts to protect the values and interests of society by regulating the behavior of individuals. The commission of a defined offense ordinarily will subject the actor to criminal sanctions. To avoid the harshness that would result from a literal application of its prohibitions in all cases, the law also provides defenses against criminal liability in certain situations. Generally speaking, these are situations in which the balance of societal interests at

stake is deemed to weigh against the imposition of criminal sanctions.

Smith, *Limiting the Insanity Defense: A Rational Approach to Irrational Crimes,* 47 Mo.L.Rev. 605, 606 (1982).

*See also Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970) (Jones, J., opinion in support of order of reversal).

Given that any relationship between the question of sanity and the element of malice is nothing more than circumstantial, we find the scheme prescribed by the General Assembly more like that upheld by the United States Supreme Court in *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), than that struck down by the Court in *Mullaney v. Wilbur.*

*Martin v. Ohio* involved a due process challenge to an Ohio Statute placing the burden of proving self-defense upon the criminally accused. Mr. Justice White, writing for the Court, noted that, although the element of purposeful killing with prior calculation and design set forth in the murder statute might in some instances overlap with an element of self-defense, in those instances the factfinder was free to conclude that the evidence presented by the defendant in support of the self-defense justification raised a reasonable doubt as to the purposeful nature of the killing. The state was not, however, relieved in any way from making a *prima facie* showing of a predesigned killing. The *mens rea* could not be presumed from the proof of the other elements of murder, and the defendant was not required to present any evidence whatsoever on the issue of intent. Only after the factfinder concluded beyond a reasonable doubt, considering all of the evidence presented, that the killing was done with prior calculation and design would the defendant have the burden of proving that the killing was justified.

We believe that the Ohio statute closely approximates the scheme adopted by our legislature with regard to the defense of insanity in murder cases. To prove that the homicide was murder, the Commonwealth must show at a

minimum that the killing was done with malice afore-thought. Any evidence which the defendant presents with regard to his sanity may be considered by the factfinder in determining whether the accused acted with the prescribed *mens rea*. However, the factfinder may have reasonable doubt as to the defendant's mental state even if no evidence of insanity is presented by the accused. Thus it cannot be said that by requiring the defendant to prove legal insanity by a preponderance of the evidence the legislature has improperly burdened the accused with negating the malice element of the offense.

It is conceded that *Martin* did not involve any presump-tions in favor of the prosecution. Prior calculation and design had to be proven by the state and could not be presumed on the basis of other evidence presented by the state. The presumption of sanity, on the other hand, is something which we permit the Commonwealth to employ in shifting to the defendant the burden of proof. Unlike the presumption of malice invalidated in *Mullaney*, however, the presumption of sanity is not emitted from other facts introduced by the prosecution, but is instead founded upon the very nature of mankind.

A person's actions cannot be said to be malicious simply because that person performed a certain act and that act brought about the death of another. Malice, as defined by the Maine Supreme Court in *State v. Lafferty, supra,* is not consistent with the nature of mankind, and so it must be proven.[10] In contrast, it is consistent with the nature of the

10. This does not mean that malice cannot be inferred from the conduct of the accused. Unlike a presumption, an inference does not automatically shift the burden of production to the opposing party. As this Court stated in *Commonwealth v. Shaffer,* 447 Pa. 91, 105–106, 288 A.2d 727, 735–736 (1972):

A rebuttable presumption is a means by which a rule of substan-tive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis are estab-lished, absent contrary evidence. An inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the more experiential accuracy of the inference warrant so doing.... Moreover, an inference does not shift the burden of persuasion or

vast majority of people that when they behave in a certain manner, they understand what it is they are doing and whether it is right or wrong. *See Ortwein v. Commonwealth,* 76 Pa. at 424–425. Our entire system of jurisprudence is founded upon this premise. For this reason, we believe the presumption of sanity is clearly distinguishable from the presumption of malice involved in *Mullaney.*

We of course are free to conclude that our own due process clause should be interpreted as mandating a burden upon the Commonwealth of proving the sanity of the accused beyond a reasonable doubt, despite the lack of a direct connection between malice and sanity. We do not, however, believe this is necessary in order to protect the due process rights of legally insane defendants.

As we have already indicated, the question of a defendant's sanity relates solely to societal concerns of whether he or she should receive punishment or treatment for conduct which is wrongful. Placing the burden of proving insanity by a preponderance upon the defendant more than adequately protects that concern. It permits the party who has control over the evidence reflecting upon this question to come forward with the evidence. We conclude that the Pennsylvania Constitution does not require that the Commonwealth prove beyond a reasonable doubt the sanity of the defendant, and that the General Assembly therefore did not act improperly in placing the burden of proving insanity, by a preponderance, upon the defendant.

■ Turning thus to the facts of the instant appeal, it is apparent that the verdict of guilty must be affirmed. The Commonwealth presented more than sufficient evidence indicating that the appellant maliciously beat her newborn

relieve the Commonwealth of the burden of proving every essential element of the alleged offense beyond a reasonable doubt.
(citations omitted). *See also Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983); *Commonwealth v. Mason,* 483 Pa. 409, 397 A.2d 408 (1979); *Commonwealth v. DiFrancesco,* 458 Pa. 188, 329 A.2d 204 (1974). Despite this distinction, an inference invoked to establish an essential element of a crime charged must pass a reasonable doubt analysis. *Commonwealth v. DiFrancesco, supra; Commonwealth v. Turner,* 456 Pa. 116, 121 n. 3, 317 A.2d 298, 300 n. 3 (1974).

child, and that these blows caused the death of the child. In addition, the Commonwealth proved beyond a reasonable doubt that appellant knowingly endangered the welfare of this child by violating a duty of care. With regard to the evidence appellant presented in support of her insanity defense, we believe a factfinder could reasonably conclude that appellant failed to meet her burden of proof. Neither expert presented by the defense testified that appellant was acting pursuant to a mental defect at the time of the killing; instead, each admitted that appellant's psychosis did not develop until after the homicide. Thus the court as finder of fact could reject the conclusion reached by the psychiatrists that appellant did not know the nature and quality of wrongfulness of her act because of a mental defect.

Accordingly, the order of the Superior Court affirming the judgment of sentence entered by the Court of Common Pleas of Bucks County is affirmed.

McDERMOTT, J., files a concurring opinion.

ZAPPALA, J., concurs in the result.

McDERMOTT, Justice, concurring.

I join in the majority opinion insofar as as I understand the ruling to be that it is NOT the duty of the Commonwealth to prove as an essential element of a crime that the accused was sane when the act was done. If one says they were insane it is their burden to offer evidence to satisfy that contention before the triers of fact.

Nor should definitions of insanity beyond the statute,[1] however ingenious or supported by the most bizarre conduct, ever be grounds to shift that burden. The credibility of the proponent of a fact, however learned or experienced, remains the central issue on who is sane or otherwise. The triers of fact remain the final arbiters under the presumption that all are sane, until who says otherwise is believed. We have familiar experience that sane men can inflict injury equal in enormity to the statutorily demented.

1. 18 Pa.C.S. § 315.